DWYER v. PROGRESSIVE BUILDING & LOAN ASS'N.—94 S. W. (2d) 725.

Western Section. May 10, 1935.

Petition for Certiorari denied by Supreme Court, Feb. 15, 1936.

McDonald, McDonald & Swepston and Julian C. Wilson, all of Memphis, for appellant.

Randolph & Clifton, of Memphis, for appellee.

SENTER, J. The complainant, Patrick Dwyer, as the executor under the will of Miss Mary Dwyer, filed the original bill in this cause against the defendant, the Progressive Building & Loan Association, to recover $5,000 on stock certificate No. 3933, in the name of the testate, Mary Dwyer, which certificate had been fully paid up. Also to recover the further sum of $707.32, the amount which had been paid by Mary Dwyer on another certificate issued to her by defendant, No. 6114, and owned by her at the time of her death, which occurred on June 17, 1932. The bill alleges that she had not borrowed on either of said certificates; that both of said certificates had been taken out by her during her lifetime. The bill charged that upon her death, by virtue of section 3899 of the 1932 Code, her relation as stockholder to the association was terminated, and that her executor upon her death became a creditor of the association on both shares of stock, and entitled to recover the amounts above stated, plus interest thereon, accruing since her death.

The bill further charged that if mistaken in the foregoing contention, then the certificate 3933, having been fully paid up for the sum of $5,000, was due and payable on demand by virtue of section 3917 of the 1932 Code, and section 9 of article 8 of the by-laws of the association.

By its answer the defendant admitted that Mary Dwyer died the owner of certificate No. 3933, for 100 shares of stock in said association, of the par value of $50 per share, and that this certificate had been full paid up and had a value of $5,000; that she also died the owner of certificate No. 6114 for 100 shares of stock, par value $50 per share, and that at the time of her death there had been paid in on this certificate in cash and accrued dividends thereon the sum of $707.32.

The answer set up by way of defense that the effect of section 3899 of the Code of 1932, when properly construed, was to place her personal representative in the position of a withdrawing stockholder who had already given thirty days' notice of withdrawal, and that he would be required to await his turn of payment on the withdrawal as provided for withdrawals under the by-laws of the association.

The chancellor held and decreed that, upon the death of Mary Dwyer, her personal representative became a creditor of the association under the sections of the Code of 1932, and the by-laws of the association, and as such creditor was entitled to demand and receive of the defendant the $5,000 on certificate No. 3933, and the sum of $707.32 on certificate No. 6114, plus interest from the date of the death of Mary Dwyer.

From the decree of the chancellor, the defendant has appealed to this court.

The assignment of errors by appellant presents three propositions:

First. That the court erred in holding that section 3904 of the 1932 Code, nor the by-laws of the defendant, section 7, article 8, were not applicable to the personal representatives of Mary Dwyer, deceased.

Second. That the court erred in holding that under section 3899 of the Code of 1932, the personal representative upon the death of the shareholder became entitled to demand and receive immediately payment of the amount the deceased had paid into the defendant association with any profits realized, regardless of the order of priority on the withdrawal list, and regardless of whether there was in the treasury sufficient funds of monthly dues to pay the same in proper order of priority.

Third. That the court erred in failing to hold that complainant's suit was premature.

We find practically no conflict in the evidence, and the facts are practically undisputed. It appears that Mary Dwyer died testate on June 17, 1932. Her will was duly probated, and the complainant, Patrick Dwyer, was named the executor and duly qualified, and was and is still acting in that capacity. At the time of the death of Mary Dwyer, she was the owner of 100 shares of the capital stock in the Progressive Building & Loan Ass'n, evidenced by certificate No. 3933; the par value of each share being $50. About nine months prior to the death of Mary Dwyer, said certificate 3933 had been fully paid up and matured, and she had permitted the amount of $5,000 to remain with the association on deposit. At the time of her death, she was also the owner of another certificate of stock, No. 6114, in the defendant association, of the par value of $50 per share. She had kept the payments thereon paid up, and the installments which she had paid and the dividends which had accrued thereon amounted to the sum of $707.32 at the time of her death.

Both certificates of stock came into the hands of complainant as the executor on June 23, 1932, and he promptly demanded payment of the $5,000 under certificate 3933, and $707.32 under certificate No. 6114. The defendant declined to pay these sums upon said demand, claiming that the effect of the death of Mary Dwyer under section 3899 was to place the name of her executor on the withdrawal list, and that he would be compelled to await his turn of payment.

It appears that both of these certificates were of the class A stock.

The charter of the defendant association contains the following provision:

"Any personal representative, upon the death of a stockholder shall be entitled to receive full amount paid in by the deceased and any profits which have been realized. If said stock is pledged to the company the same shall be retained by said personal representative."

By section 3917 of the 1932 Code it is provided:

"Such corporations may determine, by by-laws, that when each share of stock reaches a certain value to be specified, not exceeding two hundred dollars, the stockholder shall be paid upon demand such value for each share he owns and that upon such payment the stock shall revert to the corporation."

Section 9 of article 8 of the by-laws of the association, with reference to the class of stock owned by Mary Dwyer at the time of her death, provides as follows:

"Section 9. When the payments made on Par Value of these shares, together with dividends, equal Fifty ($50.00) Dollars per share, no further payments will be required or accepted. Said shares will then be fully matured and the owner may surrender his pass book and Membership Certificate, and receive a Full Paid Class 'A' Installment stock Certificate for the full par value of the shares, upon which there shall thereafter be paid to him in cash at each dividend period, the same dividends declared and paid upon Installment Stock. Such dividends will be paid at the office of the Association within ten days after they are declared. Holder of such fully paid 'Class A' Installment stock shall further have the right to withdraw all or any part of the Par Value thereof, and such withdrawal shall not affect his Membership rights or cause the Shares to become delinquent, and upon such total or partial withdrawal he will return to the station of a 'Class A' Shareholder, just beginning payments or with an extra payment to the extent of the Par Value not withdrawn."

It appears that Mary Dwyer never exercised the option of taking a full paid class A installment stock certificate, but permitted the full amount of the certificate, $5,000, to remain on deposit with the company until the time of her death.

By section 3903 it is provided:

"Said associations may issue new shares in lieu of any shares withdrawn or forfeited in one or successive series, in such amounts and of such par value as their board of directors may determine. Any stockholder or member wishing to withdraw shall give thirty days' written notice thereof to the secretary of the company, at the expiration of such time he shall be entitled to receive the amount paid in by him."

By section 3904, provision is made that at no time shall more than two-thirds of the funds of the treasury of such corporation be subject to the demands of withdrawing stockholders without the affirmative consent of the board of directors.

It is the contention of appellant under the assignment of errors that section 3899 of the Code accomplishes nothing more than to automatically pass the deceased stockholder on to the withdrawal list, and to make payment to the personal representative in order of priority and out of available money in the treasury of the association. Under

the by-laws of the association, provision is made for applications for withdrawals, requiring thirty days' notice to be filed, and payment will be made on withdrawal applications in the order in which they are filed out of the two-thirds dues paid in, and that one-third of the dues paid in not to be available to withdrawals.

It is the contention of appellants, therefore, that the only effect of section 3899 of the Code is to treat the representative of the deceased member as a withdrawing member, and to pass said representative to the withdrawal list without formal application, but that the personal representative does not stand in the attitude of a creditor of the association in the sense that the creditor does not have to await his turn to receive payment on the shares.

Appellee contends that the chancellor properly construed the Code sections and the charter and by-laws to mean that, upon the death of a member of the association, the personal representative becomes a creditor of the association and not a member, and therefore entitled to receive immediate payment of the amount due to the deceased member as of the date of the death of the deceased member, with interest thereon from the date of the death of the deceased member.

We think it was the clear intention of the Legislature to make a distinction between the rights of the personal representative of a deceased stockholder, and the rights of a withdrawing stockholder. The time when the personal representative is entitled to receive the amount paid in by the deceased member under section 3899 of the Code is "upon the death" of the member. Sections 3903, 3904 of the Code provide the time when a withdrawing stockholder is entitled to receive the amount paid in by him, and applied to rights of stockholders only, and not to a deceased stockholder. As stated by the learned chancellor in his opinion, in order to be a stockholder it is necessary to be living.

We are further of the opinion that section 3904 of the Code, which fixes the amount subject to withdrawal at two-thirds of the funds in the treasury of the company, has application alone to "withdrawing stockholders;" and section 7 of article 8 of the by-laws of the association has application alone to withdrawing stockholders.

We are further of the opinion that the requirement of the by-laws to the effect that notices of withdrawal be filed in the order in which they are received and paid in the order they are filed, as fixed as two-thirds of the receipts from the monthly dues will permit, does not apply to the personal representative of a deceased stockholder, but applies alone to withdrawing stockholders.

The learned chancellor in his opinion points out that the requirement that a stockholder wishing to withdraw give thirty days' notice to the association, and that only two-thirds of the funds in the treasury be subject to the payment of such withdrawing stockholders,

rests on sound reason. Without these provisions it would be within the power of a group of stockholders to wreck the association by making unexpected demand for payment. A natural result of having to give thirty days' notice is that the withdrawing stockholders be paid in the order in which their notices are filed and will prevent embarrassment to the association.

We will add that in addition to this observation as made by the learned chancellor, it could also be said that in seasons of depression and general financial distress, there would naturally arise occasion for members to have need of the use of any money that they may have, and the result would be the making of unusual demands for withdrawal, that would essentially result in financial embarrassment to the association, even to the extent of having the association discontinue business, and being wound up as a nongoing corporation.

It was, no doubt, the intention of the Legislature that such condition could be anticipated and prevented by the very wise provision with reference to the filing of thirty days' notice for members desiring to withdraw, and that payment would be made to such withdrawing members in the order in which their applications were filed; and, further, that only two-thirds of the dues paid in would be subject to the withdrawals, and the other one-third to remain in the treasury of the association to protect it against such a contingency or happening. On the other hand, the same conditions could not be reasonably anticipated in the deaths of members, since it could not be reasonably anticipated that deaths of members would occur with such frequency as to financially embarrass the association in settling the amount due to a deceased member promptly upon the death of such deceased member.

We think this fully meets the argument made in behalf of appellant to the effect that the personal representative stands on no higher ground with reference to the right to withdrawals than living members, and that the rights of the personal representative are no different in the matter of withdrawals than his testate.

The death of a stockholder renders it impossible for the prime purposes of the association to be carried out with reference to him, and after his death his situation relative to the association is entirely different from that of a stockholder who lives and can carry out his contract. The death of a stockholder terminates his relation as a stockholder and the personal representative becomes a creditor of the association for the amount paid in, plus profits accrued. The stocks issued by the defendant association were necessarily subject to and subordinate to the charter provisions and to the statutes which provide that upon the death of a stockholder his personal representative is entitled to receive the full amount paid in by the deceased and any profits which had accrued to the stocks. The by-laws of the corpora-

tion must not be inconsistent with its charter. The powers of the association are given by its charter, and the statutes. The charter, therefore, is the fundamental law of the corporation, and all by-laws in contravention of the charter are void. Martin v. Building Ass'n, 2 Cold., 418. A corporation can make no laws inconsistent with its constitution and the laws of the state. Smith v. Mayor, etc., of City of Knoxville, 3 Head., 245; Herring v. Ruskin Co-op. Ass'n (Tenn. Ch. App.), 52 S. W., 327. However, we do not find that the by-laws of this association when properly construed are inconsistent with the charter provisions or the statutes which govern it.

█ █ We do not deem it necessary to go into an historic discussion or review of building and loan associations, in disposing of the questions made under the assignment of errors. Suffice it to say that the Legislature has made full provision for the organization and government of these associations in this state, as have the other states. Where the Legislature has used words of reasonably plain and definite import, the courts will not put a construction upon the statute that would be contrary to the evident legislative intent. The intention of the Legislature is to be gathered from the words it has used, and if the intention is fairly expressed in words devoid of contradiction or ambiguity, there is little or no room left for interpretation or construction by the courts. Heiskell v. Lowe, 126 Tenn., 475, 153 S. W., 284.

█ The contention is made by appellant that section 3899 of the Code does not provide that the personal representative is entitled to "immediate" payment upon the death of the deceased member, and, therefore, there is nothing in the statute that would give the personal representative of a deceased stockholder the right to immediate payment, or to take the personal representative out of the class of the usual rights of withdrawal, which is to receive payment in the order of other withdrawals, and out of the two-thirds monthly dues set apart for that purpose.

We do not think that this question is now open. In the case of Falls v. Building & Loan Ass'n, 105 Tenn., 18, 58 S. W., 325, under the fifth headnote, it is stated:

"The personal representative of a deceased stockholder of a building and loan association is entitled by statute to the full amount paid in by the deceased and any profits which have been realized; in other words, to the full value of the stock at the date of the death."

It appears that the personal representative of a deceased stockholder in that association had filed a bill seeking the immediate payment of the amount due to the deceased stockholder at the time of death on his stock certificates. A general creditor's bill was filed by others, and the two causes were consolidated. It was also held in that case that the personal representative of a nonborrowing shareholder oc-

cupied the status of a creditor, and, under the statutes on the subject, was entitled to be paid the amount due the deceased member at the date of death, with interest.

Appellant seeks to distinguish the Falls Case from the instant case, because in the Falls Case the corporation was being wound up under a general creditor's bill, and that the same rule would not apply to a going association.

We do not think that this would in any way effect the construction given by the court in that case to the rights of the personal representative of a deceased member, and would not alter the relationship.

It results that we find no error in the decree of the chancellor, and it is accordingly affirmed. A decree will be entered here for the amount of the decree below, with interest thereon, and the costs of the cause, including the cost of this appeal, in favor of complainant, and against the defendant and sureties on the appeal bond.

Anderson and Ketchum, JJ., concur.