IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

---

JIM VOSS,

      Plaintiff,

v.

SHELTER MUTUAL INSURANCE COMPANY,
SHELTER GENERAL INSURANCE COMPANY,
and SHELTER LIFE INSURANCE COMPANY
OF COLUMBIA MISSOURI,

      Defendants.

Shelby Circuit No. 33592997
C.A. No. 02A01-9604-CV-00082

Hon. W. B. Acree, Judge

**FILED**

**May 22, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

GERALD F. EASTER & KAREN R. CICALA, Memphis, Attorneys for Plaintiff.

JAMES E. CONLEY and JOHN H. DOTSON, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, Attorneys for Defendants.

*REVERSED AND DISMISSED*

Opinion filed:

---

TOMLIN, Sr. J.

      Jim Voss (hereinafter "Voss" or "Plaintiff") filed suit in the Circuit Court of Shelby County against Shelter Mutual Insurance Company, Shelter General Insurance Company, and Shelter Life Insurance Company of Columbia, Missouri, (hereinafter "Shelter" or "Defendant") seeking damages allegedly caused by a breach of contract, wrongful termination of agency agreement, retaliatory discharge, and libel and slander. The trial court granted summary judgment in favor of Shelter on all claims except that of retaliatory discharge. The case was tried to a jury, which resulted in a verdict in favor of plaintiff in the amount of $165,077.00. The trial court overruled Shelter's Motion for a Judgment NOV, or In the Alternative, for a New Trial. Shelter has raised two issues for our consideration on appeal: Whether the trial court (1) erred in failing to grant its Motion for a Directed Verdict at the close of plaintiff's proof as well as at the close of all the proof; and (2) in failing to properly charge the jury as to the law of retaliatory discharge. For the reasons hereinafter stated we reverse the judgment of the trial court and dismiss.

      Plaintiff started in the insurance business as an employee of Shelter in 1982. In 1984 plaintiff entered into an agency agreement with Shelter, under which he

knowingly remained an employee-at-will throughout the course of his employment.

In mid 1991 after some conversations with fellow Shelter employees and after attending a sales meeting in his area, Voss made a telephone call to the Tennessee Department of Insurance and spoke with an official in that department.  At that time Voss voiced his complaints and objections concerning the potential increases of insurance rates by Shelter, along with some management complaints.

This conversation took place some time in July, 1991.  Later that month David Williams, the insurance department official with whom Voss talked, contacted an employee of Shelter and advised him of the details of this conversation.  Several days later, Shelter, through its Tennessee sales manager, terminated Voss's employment.  This suit was filed some two years later.

## I. The Directed Verdict Issue.

Shelter moved for a directed verdict at the close of plaintiff's proof, and it was overruled.  Shelter renewed its motion at the close of all the proof.  It was again overruled.  These two rulings by the trial court were preserved by Shelter in its Motion for Judgment NOV or in the Alternative, for a New Trial, where the trial court once again ruled in favor of plaintiff.  The principal if not sole basis of each of the two motions was that there was no proof by plaintiff of any illegal activity on the part of Shelter.

Our scope of review is as follows, as stated by the supreme court in Williams v. Brown, 860 S.W.2d 854, 857 (Tenn. 1993):

> On review of the grant of a directed verdict on motion of a defendant, it is not the office of an appellate court to weigh the evidence.  Rather, it must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary.  The trial judge's action may be sustained only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that he has advanced.

Both Voss and Shelter in their respective briefs before this court rely upon  the provisions of T.C.A. § 50-1-304, obviously drawing differing conclusions therefrom.

The pertinent provisions of this statute, sometimes referred to as "The Whistle

2

Blower" statute, codified as T.C.A. § 50-1-304, reads as follows:

**50-1-304. Discharge for refusal to participate in or remain silent about illegal activities, or for legal use of agricultural product—Damages—Frivolous lawsuits.**—(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

\* \* \* \*

This enactment of a statutory cause of action, which took place in 1990, embodies a common-law cause of action, initially recognized as an exception to the employee at-will doctrine in Clanton v. Cain-Sloan Co., 677 S.W.2d 441 (Tenn. 1984). Our supreme court previously considered this cause of action in its common-law form in both Chism v. Mid-South Milling Co., Inc., 762 S.W.2d 552, 555-57 (Tenn. 1988) and shortly thereafter in Watson v. Cleveland Chair Co., 789 S.W.2d 538, 544 (Tenn. 1989). The Chism court, while recognizing the cause of action found that there was none on the facts of the case there presented.

Both the Chism court and the Watson court showed reluctance, in our opinion, to fully embrace this cause of action. The Chism court stated the importance of basing the cause of action upon public policy clearly "evidenced by an unambiguous constitutional, statutory or regulatory provision." Id. at 556. That court noted that public policy guidance was necessary because a balance between the employer's right to terminate an at-will employee over management and public policy decisions and the employee's right to be protected from unlawful discharge lay at the heart of the law of retaliatory discharge. Id. at 555.

In Watson the court reflected its reluctance "to establish public policy or adopt an exception to the common-law by placing [its] imprimatur thereon in the absence of some constitutional or legislative precedent." Id. at 544.

In Merryman v. Central Parking System, Inc., 1992 WL 330404 (Tenn. App.

1992) after analyzing "the framework of analysis of a common-law wrongful or retaliatory discharge action", this court found four elements were necessary for the existence for a cause of action under the Act:

> (1) the plaintiff's status as an employee of the defendant;
>
> (2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities;
>
> (3) the employer's discharge of the employee;
>
> (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Id.* at page 6. *See also* Anderson v. Standard Register Co., 857 S.W.2d 555, 585 (Tenn. 1993).

While not relevant to the issue before this court at this time, our supreme court in the case of Mason v. Kenneth M. Setton, et al, No. 03S01-9606-CV-00061 slip op. (Tenn. April 7, 1997) has held that this Act does not require a showing that the employer instructed the employee to refrain from reporting the illegal activity. In so ruling the Mason court stated: "Remaining silent is the opposite of speaking out, and refusing to remain silent is the same as speaking out. The clear meaning of the statute is that employees have the absolute right to speak out about illegal activities in their work places." Id. at page 19.

We next turn to the first element of plaintiff's *prima facie* case, i.e., whether he had engaged in protected activity. In that regard the Act provides that "no employee shall be terminated solely for . . . refusing to remain silent about, illegal activities." T.C.A. § 50-1-304(a). "Illegal activities" is defined as "activities which are in violation of the criminal or civil code of this state or of the United States, or of any regulation intended to protect the public health, safety, or welfare." T.C.A. § 50-1-304(b). The incident that would have to rise to this level to satisfy this definition would of course be plaintiff's conversation about defendant, related in a telephone call to a member of the Tennessee Insurance Department. Both parties stipulated that the contents of said conversation were specifically detailed in the following memorandum entered into evidence at trial:

4

TO:   Max Dills

From: Lanny Barton

David Williams of the Tennessee Insurance Department called today concerning the status of an auto rate filing.

In the conversation he stated Shelter has an agent who is trying to get us "in a whole bunch of trouble". The agent, Jim Voss of Somerville, Tennessee recently called David. David said the agent was "mad, real mad". David said the same agent also called him last year. David made the following comments about the phone conversation:

> -Agent was extremely upset with rate increases in all lines. He stated Shelter is running him out of business because the rates are so high. Agent stated the company is making so much money that we recouped all of 1990 losses in the first quarter of 1991. Agent stated he was sending David a copy of a letter from the Tennessee State Sales Manager which included this information.
>
> -Agent stated the company was "cleaning up". Company management is looking out only for themselves, not the policyholders.
>
> -An employee was promoted to President only one to one and one-half years before retirement only so the employee could receive higher benefits.
>
> -Someone should be watching out for this company. There will be a change in presidents in the future and it has already been worked out as to who will get the position.

David also said the agent mentioned he has the Secretary of the Speaker of the Tennessee Senate (Wilder) insured.

David suggested that someone from Shelter might want to talk to the agent. David requested that his name not be used but he realized that the agent would know where the information came from.

While there is other testimony by plaintiff in the record as to what may have prompted plaintiff to call the Insurance Department, there is nothing in the record to the effect that plaintiff told any of this to the Insurance Department official.

Plaintiff contends that The Public Protection Act is a remedial statute, in that it introduces regulations conducive to the public good, and as such should be construed liberally and in furtherance of the statute's purpose, citing Loftin v. Langsdon, 813 S.W.2d 475 (Tenn. App. 1991). For the sake of this opinion, we will concur. However, we point out that in Loftin the middle section of this court set forth several other long standing rules of statutory construction that are to be followed by the courts of this

5

state. Some of these tried and true principles are as follows: In construing a statute it is the duty of the court to give every word and phrase meaning. United Canners, Inc. v. King, 696 S.W.2d 525, 527 (Tenn. 1985). Questions involving statutory construction must be answered in light of reason, having in mind the object of the statute and the mischief it aims at. State v. Netto, 486 S.W.2d 725, 728 (Tenn. 1972). Furthermore, in construing a statute the intention of the legislature is to be gathered from words it has used and not from words it has chosen not to include. Dwyer v. Progressive Bldg. & Loan Assoc., 20 Tenn. App. 16, 94 S.W.2d 725, 729 (1935). This statute, like all statutes, must be applied in its present form unless doing so would result in "manifest injustice." Scarboro v. First American Bank, 619 F.2d 621 (6th Cir. 1980). And lastly, we must take the words of this statute in their natural and ordinary sense without forcing a construction upon them which would limit their meaning. State v. Thomas, 635 S.W.2d 114 (Tenn. 1982).

When we examine the contents of the sole conversation between plaintiff and the official of the Tennessee Insurance Department, which by stipulation was admitted by plaintiff to be "relatively accurate", and to which plaintiff did not seek to add any content, we are of the opinion that plaintiff failed to introduce evidence of any "illegal activities"—namely, activities "described in violation of any civil or criminal code or regulations of this state or country, intended to protect the public health, safety or welfare." To the contrary, the first paragraph thereof merely states that the rates being charged by Shelter were so high that it was adversely affecting his business. The thrust of the balance of the complaints involve only complaints about management.

Clearly, the activities thus reported in no way could be considered "illegal activities" within the meaning of the statute. In addition, it was stipulated to by the parties that no illegal activities on the part of defendant took place in regard to the establishment of insurance rates. In our opinion this dispute involved only a combination of a corporate management dispute coupled with a personal financial problem of plaintiff. Plaintiff did not report any illegal activity in his telephone conversation with the Insurance Department. There was no proof of any violation of any established public policy. Accordingly, this court is of the opinion that the trial

court erred in failing to grant defendants' Motion for Directed Verdict at the close of plaintiff's proof, on the ground that plaintiff failed to establish a *prima facie* case.

In light of our opinion as to this issue, we pretermit Shelter's second issue pertaining to the jury charge. Accordingly, the judgment of the trial court is reversed and plaintiff's suit is dismissed. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.

_____
FARMER, J.            (CONCURS)

_____
LILLARD, J.           (CONCURS)