IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 9, 2012 Session

## JAMES EDWARD PHELPS v. JACQUELINE ANN NEWMAN ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-329-11     Wheeler A. Rosenbalm, Judge**

**No. E2012-01065-COA-R3-CV - Filed January 3, 2013**

After he lost his job at the University of Tennessee, the plaintiff filed this action against UT and several of his coworkers. The complaint can be summarized thusly: the plaintiff had an intimate relationship with a female coworker and, after it ended, she and three of her friends, who were also coworkers of the plaintiff, set out to get him fired. He seeks to impose liability on the four individuals and UT under various theories. The defendants filed a motion to dismiss which the trial court granted. The plaintiff filed a motion to alter or amend which the trial court denied. The plaintiff appeals. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court
Affirmed in Part and Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and BEN H. CANTRELL, SR.J., joined.

David B. Hamilton, Knoxville, Tennessee, for the appellant, James Edward Phelps.

Michael D. Fitzgerald, Knoxville, Tennessee, for the appellees, Jacqueline Ann Newman, Nick Coffee, Brenda Ford, David Elliott, and The University of Tennessee, Knoxville.

### OPINION

#### I.

#### A.

The complaint contains 104 numbered paragraphs, plus the introduction and the prayer for relief. It names Jacqueline Ann Newman, Nick Coffee, Brenda Ford and David Elliott

as individual defendants (collectively "the Individuals"). It alleges that, at all pertinent times, UT was the employer of the Individuals, that UT "acted directly or indirectly by and/or through" the Individuals, that all their actions "were done under and within the scope of . . . actual or apparent authority from [UT]" and that all their acts were done "within the course and scope of employment by [UT] and in furtherance of [the] interests and business purposes of [UT]." As we have stated, the plaintiff was also employed by UT, until it terminated his employment.

While it is not entirely clear from the complaint, it can be reasonably inferred that the plaintiff and the Individuals all worked in parking and traffic control for UT events, such as ball games. Some of the Individuals were apparently full-time and some were part-time. On September 18, 2010, the plaintiff saw defendant Newman sign defendant Ford's name to a "work roster" at the direction of defendant Coffee. The plaintiff and Newman had been in an intimate relationship until August 31, 2010, when they ended their relationship. Again, it is not entirely clear from the complaint, but it can be reasonably inferred that defendant Coffee and defendant Elliott were supervisors of the plaintiff, Newman and Ford. Newman told the plaintiff that she did what she did in order that Ford would qualify for football tickets, which tickets were given to Coffee. Ford actually worked somewhere other than UT on the day in question. The plaintiff was reportedly "aghast" at the scheme to commit the crime of falsifying work records. He reported Newman, Ford and Coffee to the chief of the UT police. He was told to "stop stirring up trouble." He also learned of a scheme by the Individuals to park illegally and for free in a reserved UT parking lot. He reported this scheme to the UT police. Again, he was told to stop making trouble. The plaintiff went over the head of the chief of police but nothing was done. The plaintiff alleges that the Individuals exerted some form of improper influence on the chief of police.

The Individuals allegedly became "fed up" with the plaintiff. They developed a plan, the goal of which was to have him fired. Allegedly, the Individuals filed "false reports and other harassment" against him. UT investigated and learned of the activities of the Individuals against him, but did nothing. The plaintiff reported to Coffee that Newman and Ford were taking excessive breaks. Coffee told the plaintiff to "mind his own business." It is unclear from the complaint where it happened, but, somewhere at some point in time as part of her campaign against the plaintiff, Newman walked up behind the plaintiff, grabbed him by his testicles, had someone ready to snap a picture, took the picture and posted it on the internet for all to see. Defendant Ford, who also works for KUB, intentionally altered his utility bill. The plaintiff caught Newman and Ford smoking in a no smoking area. He took a picture and reported the activity, picture in hand, to UT authorities. UT police took the picture away from him. The plaintiff complained to Coffee and Elliott but he was rebuffed. Allegedly, Coffee later gave the plaintiff some sort of mysterious hand signal that he had lost the battle and would be fired.

On January 13, 2011, Newman, "aided by [d]efendants Ford and/or Coffee," filed a petition for an order of protection. The order was granted ex parte. It prohibited the plaintiff from coming about Newman. Newman, in fact, did not fear the plaintiff; her purpose in the false petition was to have the plaintiff fired. Again, it is not clear from the complaint, but, it appears, from the petition and order of protection attached to the complaint, that the plaintiff's work station was in close proximity to Newman's. The plaintiff tried to explain his problem to Coffee, presumably the plaintiff's supervisor. Rather than trying to help the plaintiff, Coffee responded in words to the effect of, "How are you going to get out of" the order of protection? The plaintiff went to Elliott, but Elliott did nothing. The plaintiff was fired for not coming to work. Having achieved what she wanted with the order of protection, Newman agreed to its dismissal on May 25, 2011.

At its mid-point, the complaint begins to set forth the various causes of action supposedly made out by the factual allegations. Each count incorporates all previous allegations. The first count is for common law retaliatory discharge against all defendants. The complaint alleges the activity that the plaintiff reported was criminal and unsafe. It further alleges that all defendants acted "intentionally, maliciously, and/or recklessly, and with malice and/or an improper purpose or motive, but without probable cause." It further alleges that "the Plaintiff's reporting, or refusal to remain silent about, the criminal activity was an exclusive causal relationship of the Plaintiff's discharge. . ."

Next is a count against UT, Coffee and Elliott for statutory retaliatory discharge. The complaint alleges that it is not UT's practice to fire employees for a mere "no show," and that his failure to report to work in the face of a protective order was a pretext for the real reason, *i.e.*, the reporting of the criminal activity of the Individuals and of safety problems. The complaint alleges further that the plaintiff's refusal to keep silent "was an exclusive causal relationship of the Plaintiff's discharge . . ."

Against Newman alone, the complaint recites a count of malicious prosecution related to the order of protection and a count of battery related to "Newman's grabbing of [the p]laintiff's testicles." The complaint also alleges the picture that was taken by defendant Ford at the moment Newman committed the battery, and then posted on the internet, amounts to an invasion of privacy by both Newman and Ford.

The complaint includes a count of intentional infliction of emotional distress, as well as a count for civil conspiracy, against the Individuals. The complaint claims that the Individuals acted with "the specific intent" or "a reckless disregard" of the probability that he would sustain a serious mental injury and emotional distress. The complaint also alleges that the plaintiff did in fact sustain "serious mental injury and emotional distress, hives, sleep deprivation, pain, and suffering." The complaint goes on to allege that the Individuals acted

with a common purpose and, at least, a tacit understanding and, in furtherance of their common unlawful purpose, carried out the acts alleged in the complaint.

Finally, the complaint alleges that UT, as their employer, is liable for the acts of the Individuals. It also alleges the Individuals were UT's agents, acting in furtherance of the interests and purposes of UT, making UT liable as the principal of its agents.

B.

The defendants filed a motion to dismiss, which, as we have stated, the trial court granted. The order dismissing the complaint states:

> Based on the doctrine of sovereign immunity, [UT], an agency of the State of Tennessee, is immune from all claims asserted against it except for the claim for retaliatory discharge under Tenn. Code Ann. § 50-1-304.
>
> With respect to the claim against [UT] under Tenn. Code Ann. § 50-1-304, [the p]laintiff makes no allegation anywhere in the Complaint that he was discharged or terminated "solely" for refusing to participate in or to remain silent about illegal activities, a required element of his claim under the statute. To the contrary, the [c]omplaint alleges multiple reasons for his termination. In the absence of any allegation of sole causation, the [c]omplaint fails to state a claim upon which relief can be granted under Tenn. Code Ann. § 50-1-304.
>
> With respect to the various claims asserted against the [I]ndividual[s] . . ., the [c]omplaint specifically asserts at several points that all of the alleged actions and/or failures to act by the [I]ndividual[s] . . . on which this suit is based were done in the course and scope of . . . [UT] employment and in furtherance of the interests and business purposes of [UT]. Further, the [c]omplaint does not allege anywhere that the [I]ndividual[s'] acts involved willful, malicious, or criminal acts or omissions. Accordingly, the [I]ndividual[s] . . . are immune from all claims asserted against them pursuant to Tenn. Code Ann. § 9-8-307(h). Further, [the p]laintiff's claims against the [I]ndividual[s] . . . for common law and statutory retaliatory discharge cannot be maintained as a matter of law because the

-4-

> [I]ndividual[s] . . . are not, and cannot be, [the p]laintiff's employer.
>
> With respect to the claim of malicious prosecution asserted against Defendant Jacqueline Ann Newman, [the p]laintiff has made no allegation that the judicial proceeding underlying his claim, an order of protection obtained by [d]efendant Newman, was terminated in [the p]laintiff's favor. Accordingly, the [c]omplaint fails to state a claim against Newman upon which relief can be granted for the tort of malicious prosecution.

(Paragraph numbering in original omitted.)

The plaintiff filed a motion to alter or amend in which he made the following points, which we have paraphrased:

> Paragraph 69 of the complaint in the statutory retaliation count alleges "an exclusive causal relationship" between the whistleblowing and the discharge.
>
> Paragraph 59 of the complaint alleges that the defendants, collectively, "intentionally, maliciously, and/or recklessly, and with malice and/or an improper purpose or motive . . . sought his termination."
>
> Many of the alleged criminal acts require an intentional act.
>
> The abandonment of a lawsuit can satisfy the element of favorable termination in a malicious prosecution claim.

In the hearing on the plaintiff's motion, he argued that his complaint should be read as making allegations in the alternative. As previously noted, the trial court denied the motion.

II.

The plaintiff raises the following issues on appeal:

> Whether the trial court erred in the application of Tenn. Code Ann. § 9-8-307(h).

Whether the trial court erred in the application of Tenn. Code Ann. § 50-1-304.

Whether the trial court erred in the dismissal of the entire case when the motion to dismiss did not seek dismissal of all claims.

Whether the trial court erred in the dismissal of the battery claim.

Whether the trial court erred in the dismissal of the false light invasion of privacy claim.

Whether the trial court erred in the dismissal of the intentional infliction of emotional distress/outrageous conduct claim.

Whether the trial court erred in the dismissal of the civil malicious prosecution claim.

Whether the trial court erred in the dismissal of the civil conspiracy claim.

Whether the trial court erred in the dismissal of employer liability.

III.

In *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422 (Tenn. 2011), the Supreme Court articulated and reaffirmed the standards by which we evaluate a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.

-6-

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

Under Tennessee Rule of Civil Procedure 8, Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court. Our state's notice pleading regime is firmly established and longstanding; this Court recognized well before the Tennessee Rules of Civil Procedure were adopted that the object and purpose of any pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried.

To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations. Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state the facts upon which a claim for relief is founded. A complaint need not contain detailed allegations of all the facts giving rise to the claim, but it must contain sufficient factual allegations to articulate a claim for relief. The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level. . . .

\* \* \*

Moreover, courts are not required to accept as true assertions that are merely legal arguments or legal conclusions couched as facts.

*Id*. at 426-27(quotation marks and citations in original omitted).

IV.

A.

We begin our analysis with the observation that we are sympathetic to the trial court's problems with this complaint. It is certainly not a model of clarity; it is more like a puzzle that, through careful study, portrays a scene or event even though some of the pieces are missing. We mentioned some of the absent pieces as we worked our way through the complaint. It is only by giving the plaintiff the benefit of all ambiguities and doubts and all reasonable inferences, that we are able to understand it. Further, we note that, even though the plaintiff argues some of the allegations must be read as alternative allegations, the complaint does not use that terminology. Nevertheless, we believe the standard applicable to a motion to dismiss for failure to state a claim requires us to reverse that part of the order dismissing the statutory retaliatory discharge claim against UT, as well as some of the claims against the Individuals.

B.

We start with the claims against UT. As we understand the plaintiff's brief, he does not challenge the dismissal of the common law retaliatory discharge claim, but he does challenge the dismissal of the statutory retaliatory discharge claim. The trial court held that the complaint did not state a cause of action for retaliatory discharge in violation of Tenn. Code Ann. § 50-1-304 (b) (2008 and Supp. 2012) because, in the words of the trial court, there is "no allegation . . . that he was discharged or terminated 'solely' for refusing to participate in or remain silent about illegal activities . . ." The plaintiff concedes, as he must, that the statute requires an employee's whistleblowing activity to be the sole cause of the termination:

> No employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities.

*Id*. (emphasis added). The plaintiff argues that he made the equivalent allegation in paragraph 69 of the complaint, which states that his whistleblowing "was an exclusive causal relationship of the Plaintiff's discharge, and any other reason cited by Defendant Elliot[t] [who presumably fired him] is a mere pretext for the real cause in fact of discharge." UT argues in its brief that the trial court was correct, but cites *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342 (Tenn. Ct. App. 1997), a case that describes the causation element in language almost identical to the language in the complaint in this case. In *Voss*, we held that to make

-8-

out a case of statutory retaliatory discharge, the plaintiff must show "an exclusive causal relationship between [his] refusal to participate in or remain silent about illegal activities and the . . . termination." *Id*. at 344.

The trial court in the present case stated that the alleged whistleblowing could not have been the sole cause of the termination because the complaint alleges the plaintiff was terminated for other reasons. The only other reason we can glean from the complaint is the failure to show at work in the face of the protective order. However, the complaint alleges that UT does not fire people for merely failing to show up for work and that, to the extent that "reason" was given for the termination, it was a pretext for the real reason.

The plaintiff also argues that he is allowed to plead in the alternative that whistleblowing was the sole cause and one of multiple causes. The plaintiff is correct that Tenn. R. Civ. P. 8.05 (2) expressly allows an alternative pleading. It states:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically. . . . A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

In the case of inconsistent allegations, a party is not to be penalized or held to one allegation to the abandonment of the other. ***Barnes v. Barnes***, 193 S.W.3d 495, 501 (Tenn. 2006)("[A]lternative pleadings are expressly permitted, regardless of consistency."); ***Worley v. Weigel's Inc.***, 919 S.W.2d 589, 594 (Tenn. 1996)("An alternative pleading may not be used as an admission.").

We hold that the trial court erred in dismissing the statutory retaliatory discharge claim. The allegation that the whistleblowing activity was the exclusive cause of the termination is the equivalent of an allegation that it was the sole cause of the termination. Any allegation to the contrary is properly construed as an alternative allegation, especially in light of the allegation that any other reason given for the termination was a pretext for the real reason.

C.

The plaintiff challenges the dismissal of all other claims against UT, *i.e.*, those that were based on the acts of the Individuals. He cites ***Hughes v. Nashville***, 340 S.W.3d 352 (Tenn. 2011), and ***Limbaugh v. Coffee Medical Center***, 59 S.W.3d 73 (Tenn. 2001) for the proposition that UT can be held liable for even the intentional torts of an employee when it was on notice that the plaintiff employee was an intended victim of the actor's malice. The

plaintiff reads *Hughes* and *Limbaugh* too broadly. *Limbaugh* simply holds that, under the Governmental Tort Liability Act ("GTLA"), as codified at Tenn. Code Ann. § 29-20-205 (2012), a governmental entity can be held liable for the negligent failure of one of its employees to supervise another employee who inflicted injury through an intentional battery. 59 S.W.3d at 81, 84. *Hughes* makes it clear that liability does not lie where the only actions attributable to the entity are intentional actions, rather than negligent actions. *Hughes* involved a claim that a city- employed loader operator had injured the plaintiff. 340 S.W.3d at 369. It was undisputed on appeal that the plaintiff failed to prove negligent supervision of the loader operator. *Id*. The Supreme Court, in *Hughes*, affirmed the trial court's finding that because the loader operator engaged in an intentional act, the entity was entitled to immunity. *Id*. at 371.

The "respondeat superior" count is set forth in paragraphs 96 through 104 of the complaint. The only supervisory actors identified in those paragraphs are defendants Coffee and Elliott. It is by and through their actions that the plaintiff seeks to impose liability on UT. However, all of the allegations in the complaint related to Coffee and Elliott state that they acted intentionally, as co-conspirators with defendant Newman, in order to have the plaintiff fired. In fact, defendant Coffee is allegedly part of the problem from the outset; he was the one who allegedly took the tickets for the shift for which defendant Ford was given credit, but did not work. It is true that the complaint alleges on information and belief that some sort of internal audits provided management with knowledge of what was going on. This isolated assertion falls far short of stating a claim for negligence imputable to the entity pursuant to Tenn. Code Ann. § 29-20-205. The requirement that we read the allegations of a complaint liberally does not allow us to "create a claim that the pleader does not spell out in his complaint." *Givens v. Mullikin*, 75 S.W.3d 383, 406 (Tenn. 2002). In short, we hold that because all the conduct alleged in the complaint is intentional, UT is immune.

D.

We turn now to the claims against the individuals. The court held that the Individuals are all entitled to immunity pursuant to Tenn. Code Ann. § 9-8-307(h)(2012). That section provides:

> State officers and employees are absolutely immune from liability for
>
> acts or omissions within the scope of the officer's or employee's office or employment, *except* for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. . . .

(Emphasis added.) The court held that because the complaint alleges the actions were taken in the course and scope of employment, and in furtherance of UT's interests, and "does not allege anywhere that the individual Defendants' actions involved willful, malicious, or criminal acts or omissions" the Individuals are entitled to immunity. The defendants argue in their brief that the plaintiff did not invoke the exception to immunity because "nowhere did he plead that their actions were willful, malicious, criminal or done for personal gain." We are puzzled by the court's holding and the defendants' argument; the complaint clearly states at paragraph 53 that "[a]ll the [d]efendants . . . actively and intentionally, maliciously, and/or recklessly, and with malice and/or an improper purpose or motive, but without probable cause, sought his termination." The allegations that precede paragraph 53, if believed, provide a factual basis for the allegations of intent and malice. The complaint also states at numerous places that the acts of at least some of the Individuals were illegal. All the counts that follow paragraph 53 incorporate all preceding allegations. We are simply unable to understand how the court could conclude and how the defendants could continue to argue that there are no allegations that put the acts of the Individuals within the exception to immunity. Accordingly, we hold that the trial court erred in holding that all claims against all Individuals are barred by immunity. To the extent that claims against the Individuals, or some of them, include allegations of "willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain," those claims survive for further proceedings in the trial court on remand.

E.

The plaintiff argues that the dismissal of the order of protection by defendant Newman after it was issued, and after she secured his termination, is a favorable termination contrary to the holding of the trial court. We disagree. In *Parrish v. Marquis*, 172 S.W.3d 526 (Tenn. 2005), the Supreme Court examined the meaning of the terminology, "favorable termination," as an element of a malicious prosecution claim. Previously, in *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992), the High Court had held that abandonment of a lawsuit, in some circumstances, can constitute a favorable termination. In *Parrish*, the Court limited its holding in *Christian* to require that any termination reflect negatively on the merits of the underlying case:

> More specifically, if the dismissal somehow indicates that the defendant is innocent of wrongdoing, it will be considered a favorable termination . . . . On the other hand, if the reason for dismissal is "not inconsistent" with a defendant's wrongdoing, it will not be considered a favorable termination. . . .

-11-

***Parrish***, 172 S.W.3d at 531[1] (*quoting **Siliski v. Allstate Ins. Co.**,* 811 A.2d 148, 151 (2002)). Contrary to the plaintiff's argument, the order dismissing the order of protection does not in any way reflect that the plaintiff was innocent of wrongdoing. It was dismissed only because defendant Newman agreed to the dismissal. The voluntary dismissal is not in any way inconsistent with wrongdoing on his part. We hold that the trial court did not err in holding that the complaint did not state a claim against defendant Newman for malicious prosecution.

V.

The judgment of the trial court is affirmed in part and reversed in part. That part of the judgment holding that the complaint does not state a claim for common law retaliatory discharge is affirmed, as is that part of the judgment holding that the complaint does not state a claim for malicious prosecution against defendant Newman. That part of the judgment holding that the complaint fails to state a claim against UT for statutory retaliatory discharge is reversed, as is that part of the judgment holding that all the Individuals are entitled to immunity for lack of allegations of willful, malicious or criminal conduct. Costs on appeal are taxed to the appellees, Jacqueline Newman, Nick Coffee, Brenda Ford, David Elliott, and The University of Tennessee, Knoxville. This case is remanded, pursuant to applicable law, for further proceedings.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[1]As pertinent to our holding, ***Parrish*** was followed in the recent Supreme Court case of ***Himmelfarb v. Allain***, 380 S.W.3d 35, 40-41 (Tenn. 2012). However, ***Himmelfarb*** did overrule ***Parrish*** "[t]o the extent that ***Parrish*** can be read as adopting the Restatement (Second) approach." ***Id***. at 41. The "Restatement" issue is not involved in the present case.