**Verlie O. CHISM, Plaintiff–Appellee,**

v.

**MID–SOUTH MILLING COMPANY, INC. and J.L. Petty, Defendants–Appellants.**

Supreme Court of Tennessee, at Jackson.

Dec. 5, 1988.

William P. Kenworthy, Stephen H. Biller, Memphis, for defendants-appellants.

Scott F. May, Memphis, for plaintiff-appellee.

## OPINION

HARBISON, Chief Justice.

This is an action for the alleged retaliatory discharge of a corporate officer. The

trial judge rendered summary judgment for the employer. The Court of Appeals reversed. After careful consideration of the allegations of the complaint and of two very brief affidavits filed by the parties, we are of the opinion that the conclusion of the trial judge was correct. Accordingly his judgment is reinstated and the cause is dismissed.

The complaint left much to inference and suggestion. The employer chose to admit the allegations thereof by filing a motion to dismiss. It then attempted to deny some of the allegations by filing a very brief, conclusionary affidavit. The plaintiff responded with a similar affidavit.

The tort of retaliatory discharge is one which has been recognized by an increasing number of states but usually in limited and specific circumstances. A pleader, of course, is not required to plead evidence. Nevertheless, under the rules of civil procedure a complaint must contain a short and plain statement of the claim showing entitlement to relief. T.R.C.P. 8.01. Any pleading relying upon the violation of a statute must specifically refer to the statute or state all of the facts necessary to constitute such breach. T.R.C.P. Rule 8.05. Similarly where the pleader alleges a breach of a common law duty he must state·facts sufficient to withstand a motion under T.R.C.P. 12.02(6).

■ The complaint in this case was filed on September 10, 1986, and was never amended, even though it was met by a motion to dismiss for failure to state a claim, which was filed on October 15. The motion of the defendants was not disposed of until March 27, 1987, over six months after the complaint was filed.

In review of the case, therefore, the Court is necessarily confined to the allegations of the complaint and to the brief affidavits which were filed and considered. It is recognized that the allegations of the complaint must be taken as true in the present posture of the case, and the affidavits must be construed most favorably to the plaintiff in considering the motion for summary judgment. *Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276 (Tenn. App.1977).

As put to the Court of Appeals, the issue presented by the plaintiff was whether under state law a cause of action for retaliatory discharge arises when an at-will employee is terminated "solely for refusing to participate in, continue to participate in, or to remain silent about illegal activities."

The problem with the statement of that issue is that there are no allegations in the complaint that the employee was ever at any time required or requested to participate in, to continue to participate in or to remain silent about any illegal activities of the employer or its personnel. The complaint does not allege that plaintiff was terminated for any such reason. The complaint, construed most favorably to the employee, reflects a disagreement between the employee and the employer about interpretations of various provisions of the Internal Revenue Code, but it at no point contains any allegation that the employee was terminated because he did not participate in or suppress alleged violations, and there is a total absence of any allegation that he was requested or required to remain silent concerning them.

■ The complaint is in four counts, the principal one consisting of six and one-half pages. The other three counts are dependent upon the statement of a cause of action in the first count. The complaint does not state that the plaintiff was an employee at will, but when called upon to produce the contract of employment, pursuant to Rule 10.03, T.R.C.P., the plaintiff failed to respond. The briefs of the parties admit that the plaintiff was employed at will and that there was never any formal contract of employment.

The employee alleges that he was employed on or about March 4, 1985, as the "Vice President/Finance, Secretary and Treasurer" of Mid–South Milling Company, Inc. and all its subsidiaries and affiliates. He was terminated on or about July 3, 1986.

There are no allegations concerning the nature of the business of Mid–South Milling, Inc. or its subsidiaries. There is no

claim that the plaintiff was a stockholder or a member of the Board of Directors. There is no amplification as to the nature of his duties in the capacity above referred to.

An individual defendant, J.L. Petty, is described in the complaint as the President and Chief Executive Officer of Mid–South. The complaint alleged that the plaintiff was employed at a substantial annual salary together with a number of fringe benefits. There are no allegations in the complaint concerning the background or training of the plaintiff. It is not alleged that he was a tax attorney, tax accountant, learned or experienced in tax matters, or that he was even trained in principles of accounting and bookkeeping. All that is said about him is that he was employed in the capacity quoted above.

The complaint alleged that for some time prior to the employment of plaintiff, the corporate employer, under the direction of Petty, "had employed operating policies and procedures that were in violation of the Internal Revenue Code." No section of that Code is referred to in the complaint, and no statutory provisions, state or federal, are cited in the principal count.

The complaint alleged that the violations "were soon brought to the attention of Petty, by the plaintiff, who made many suggestions that would bring Mid–South into compliance with the provisions of the Internal Revenue Code."

There follow a number of paragraphs referring to changes which were recommended by the plaintiff, some of which were apparently accepted by the employer and some of which must not have been. The complaint is not specific in this regard. Many of the alleged violations of the Internal Revenue Code had occurred before the plaintiff was employed. As stated, there is no reference to specific tax provisions or regulations at any point in the complaint.

Primarily the complaint alleged that the corporate employer (said in the briefs of the parties, although not in the pleadings, to be a closely-held corporation) had paid benefits to members of the Petty family by way of payroll payments, credit cards, automobiles, use of aircraft, and the like, without their performing commensurate services for the corporation. There is no allegation in the complaint that the plaintiff was required to sign any of the checks of these parties or to approve any of the disbursements involved. There is reference in one paragraph of the complaint to a "payroll clerk" who issued certain checks to one of the family members. The complaint fails to explain any connection between this disbursement and the plaintiff.

The complaint also alleges that vehicles owned by the corporation were used by family members of Mr. Petty and expenses charged to the corporation, even though these family members did no work for the corporation. As to Mr. Petty, it was alleged that his company-owned automobile was used by him "with very little business use made of this automobile."

At other points it is alleged in the complaint that a company-owned condominium was used by Mr. Petty for his personal use "and little or no business purpose." There were allegations that the company had failed to report properly the expenses and local taxes on a company-owned airplane. It was alleged that a debt owed to another company controlled by Petty had been transferred to the corporation and was written off by the corporation as a bad debt. This was labeled by the pleader as "a tax evasion device to transfer the debt from a company that had no revenue and could not use the loss as a tax deduction to a company (Mid–South) that could recoup part of the debt through a tax write-off."

The heart of the complaint is the following paragraph:

The plaintiff was the victim of a retaliatory discharge for: (a) insisting Mid–South and Petty comply with the provisions of the Internal Revenue Code; and (b) the plaintiff's continual policing of the operations of Mid–South and affiliates in an attempt to bring them within the provisions of said Internal Revenue Code."[1]

1. This language was repeated verbatim in appel- lee's affidavit filed in opposition to appellant's

In our opinion, this complaint is too general to state a claim for relief for retaliatory discharge. There is no allegation that the plaintiff, Mr. Chism, ever signed a tax return, a corporate financial statement or any other kind of business or regulatory report. There is no allegation that he was required or requested to do so. There is no allegation that it was his responsibility to file tax returns, prepare them, furnish data for their preparation or to take any other corporate action. All that can be determined from this complaint is that a corporate finance officer disagreed with corporate management about the reporting of expenses and disbursements for tax and accounting purposes. There is no claim that the Internal Revenue Service had ever audited the corporation or any of its subsidiaries; that the company had ever experienced any tax difficulties, or that the plaintiff ever had any connection with or responsibility for the preparation and filing of tax records, returns or other financial statements. Obviously he must have expressed his opinion concerning whether the company complied with the Internal Revenue Code as he understood it, but management has the right to terminate an employee over management and policy decisions, so long as the employer does not violate any clearly established public policy in doing so.

The Court of Appeals, in sustaining the complaint, stated that:

> Plaintiff has alleged in his complaint that he was discharged for refusing to remain silent about and acquiesce in Mid–South's illegal activities. As Mid–South's Vice–President/Finance, Secretary and Treasurer, plaintiff could be exposed to criminal liability for Mid–South's activities.

The difficulty with this conclusion is that the complaint made no such allegations, nor stated any facts which could reasonably support such a claim. The reasons the plaintiff alleged for his discharge are quoted above—insisting that the Company comply with the Internal Revenue Code and the plaintiff's "continual policing" of the operations of the company in an attempt to bring them within the provisions of that code.

If the complaint had properly raised the issue relied upon by the Court of Appeals, we might be persuaded to reach a different result. When the Court is dealing simply with allegations of pleadings, however, as here, the Court is not free to construct additional facts or allegations. We have already referred to the fact that ample opportunity was afforded to amend this complaint if additional facts could conscientiously be alleged under the ethical requirements of Rule 11, T.R.C.P.

The doctrine of employment at will has long been recognized in this state, with the concomitant right of either party to terminate such a relationship with or without cause. *See generally Payne v. The Western & Atlantic Railroad Company.*, 81 Tenn. 507 (1884); *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395 (Tenn.App.1981); *Little v. Federal Container Corp.*, 61 Tenn. App. 26, 452 S.W.2d 875 (1969). For discussion of termination of contracts having a definite term, see *Nelson Trabue, Inc. v. Professional Management–Automotive, Inc.*, 589 S.W.2d 661 (Tenn.1979).

Both by statute and case law in this and other states some restrictions have been imposed upon the right of an employer to terminate an employee, usually for reasons of well-defined public policy. For example, in Tennessee any right to terminate an employee for service on a jury has been eliminated, and statutory sanctions for violation have been provided. *See* T.C.A. § 22–4–108(f). There are restrictions upon employment or termination of persons for discriminatory reasons involving race, creed, color, sex, age, religion or national origin. *See* T.C.A. § 4–21–401(a). There are similar restraints to prevent discrimination in the hiring and termination of handicapped persons. *See* T.C.A. § 8–50–103; *see also Plasti–Line, Inc. v. Tennessee Human Rights Comm'n*, 746 S.W.2d 691 (Tenn.1988).

Further, in the case of *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441 (Tenn.1984) this Court recognized that there could be a

Rule 56 motion, without amplification or statement of any additional facts.

claim for retaliatory discharge where a statutory policy is violated but the statute does not prescribe a remedy for the violation. In that case an employee was allegedly discharged for exercising her rights under the worker's compensation statutes. The Court held that if such allegations could be established by competent proof, a claim for damages in tort would lie.

There have been similar developments in other states, many of the leading cases being cited in the foregoing opinions. The present case is not suitable for undertaking to define the limits of the tort of retaliatory discharge or attempting to list all of the public policy violations which might justify such an action.

■ It is obvious that the exception cannot be permitted to consume or eliminate the general rule. Corporate management, in cases such as this, must be allowed a great deal of discretion in the employing or discharging of corporate officers, where the latter are not employed for a definite term and have no formal contract of employment. *Whittaker v. Care–More, Inc.,* 621 S.W.2d 395, 397 (Tenn.App.1981). To be liable for retaliatory discharge in cases such as this, the employer must violate a clear public policy. Usually this policy will be evidenced by an unambiguous constitutional, statutory or regulatory provision. Further, the violation must be a substantial factor in the termination of an at-will employee, agent or officer.

Examples of clearly defined public policies which warrant the protection provided by this cause of action may be found in the case of *Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959) in which an employee was discharged for refusing his employer's demand that he commit perjury before a legislative committee. In *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985) an employee was discharged because she insisted upon obeying a lawful subpoena. In *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818, *app. den'd* 314 N.C. 331, 335 S.E.2d 13 (1985) the employee was discharged because she had insisted upon testifying truthfully in litigation. In *Nees v. Hocks,* 272 Ore. 210, 536 P.2d 512 (1975) an employee was discharged for honoring a subpoena to jury duty, and in *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) the employee was discharged for not seeking to be excused from jury duty.

There have been several cases where employees were discharged for refusing to falsify records or to acquiesce in the mislabelling of unsafe or defective products. *E.g., Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (quality control director discharged for calling attention to specific statutory standards where he was personally exposed to sanctions); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App.1985) (refusal to certify falsely the conduct of required testing of products); *Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (reporting consumer fraud violations); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984) (insistence by employee that employer comply with federal statute involving foreign corrupt practices). In each of these cases, however, very specific statutory violations were charged, and usually the employee's personal exposure to civil or criminal sanctions was emphasized.

■ No comparable situation is presented in the present case under the allegations of the complaint. In order to state a claim for relief for this very exceptional tort action, the pleader must show clear violation of some well-defined and established public policy. Of course, general public policy demands accurate record keeping and compliance with the tax laws, but the Internal Revenue Code and its attendant regulations are very broad and sweeping in their terms. There can be much legitimate disagreement concerning their application in specific cases. The complaint in the present case on several occasions alleges "little or no" justification for expenses claimed.

There is no allegation that there would have been either civil or criminal sanctions upon the plaintiff for any of the violations alleged. Further, as previously stated, at no point has the plaintiff ever alleged that

tax accounting was his responsibility or his area of expertise. Facts more specific and clear than those stated in this complaint, in our opinion, are necessary in order to serve as a predicate for a claim for retaliatory discharge. The action is not available to every disappointed or disgruntled employee or officer.

We do not intend to disparage such an action. The Court is generally prepared to uphold such claims in appropriate cases, such as the *Clanton* case, *supra.* Mere generalizations and conclusions, however, will not suffice when a pleading is challenged by a Rule 12 or Rule 56 motion. Certainly it would have been a simple matter to amend the complaint or to file a specific affidavit if the plaintiff were in fact discharged because he refused to participate in illegal activities, to continue to participate therein or to remain silent about them as stated in his appellate brief.

The judgment of the Court of Appeals is reversed. The judgment of the trial court is reinstated, and the cause is dismissed at the cost of appellee. The case will be remanded to the trial court for collection of costs accrued there and for any other proceedings which may be necessary.

COOPER, DROWOTA and O'BRIEN, JJ., and McLEMORE, Special Judge, concur.