NO. 07-08-0073-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 13, 2009
_____

THE STATE OF TEXAS,

Appellant

v.

1998 TOYOTA LAND CRUISER, OKLAHOMA TAG CMN-633
VIN JT3HT05J9W0007179,

Appellee
_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 58,915-A; HON. HAL MINER, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J. and CAMPBELL and HANCOCK, JJ.

The State appeals from the trial court's denial of its motion to forfeit the 1998 Toyota Land Cruiser of Cole Austin Donelson. We agree, reverse, and remand.

*Background*

The Land Cruiser was seized after Donelson was found selling marijuana from it. Donelson sought to recover the vehicle. At issue was the propriety of the detention that resulted in his arrest.

In permitting Donelson to recover the Cruiser, the trial court determined, via written conclusions of law, that the interaction between the arresting officer and Donelson was not a consensual encounter but rather an "investigative stop." "[T]here were no[] articulable facts sufficient to give rise to a rational inference that a crime was being committed," the court continued. Thus, the "investigative detention . . . amounted to an illegal stop lacking in sufficient articulable facts or probable cause." Moreover, the smelling of marijuana by an officer occurred "after the illegal investigative detention[,] and probable cause . . . cannot be based on facts discovered after the illegal detention." So, because the detention was illegal, the State lacked basis to forfeit the vehicle.[1] We have been asked by the State to review this decision.

*Law and Its Application*

Whether the trial court's decision regarding the nature of the detention is sound depends upon whether it abused its discretion. According to the Texas Supreme Court, we determine this by applying the standard of review developed by the Court of Criminal Appeals in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 634 n.3 (Tex. 2000). Under that standard, great deference is accorded the trial court's interpretation of historical facts. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005), *Guzman v. State*, 955 S.W.2d at 87. This is so because the trial court has the sole authority to assess the credibility of the witnesses; simply put, it may choose who to believe. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim.

---

[1]In a forfeiture proceeding, the State must show that the officer had probable cause to reasonably believe that a substantial connection existed between the property to be seized and criminal activity. *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex. 1991).

App. 2000); *State v. Ramirez*, 246 S.W.3d 287, 289 (Tex. App.–Amarillo 2008, no pet.). However, like deference is not afforded the trial court's application of law to the facts or its interpretation of the law. *Ford v. State,* 158 S.W.3d at 493. Those matters are reviewed *de novo*. *Id*.; *Guzman v. State*, 955 S.W.2d at 87.

Next, in support of the legal conclusions listed above, the trial court entered the following findings of fact:

5. On May 11, 2007, Capt. Roger Short of the Randall County Sheriff's Office was working the Sober program in an unmarked vehicle watching for alcohol violations and other offenses in the area of Paramount Street and South Western.

6. At approximately 10:40 p.m. . . . Short, while parked, observed a blue pick-up in the Mr. Gattis pizza parking lot.[2] The driver, later identified as Cooper Mark Hurst W/M 08-14-89, was sitting in the pick-up alone. As Short was watching, another vehicle, (a green 1998 Toyota Land Cruiser . . .), drove up next to the blue pick-up. Hurst got out of his pick-up and got into the . . . Land Cruiser. Capt. Short could see into the vehicle and saw the driver of the Toyota reach into the back seat of the vehicle and grab a camouflage back pack. Short could see Donelson [who was driving the Land Cruiser] retrieving items from the back pack. Short observed that Donelson would reach back and forth with his right hand from the back seat area and place something on the center console.[3] Short radioed several other officers who were in the area of the possible drug transaction. Short advised two uniformed officers to make contact with [the] occupants.

7. Deputy Bushef parked his patrol unit behind the Land Cruiser while Lt. Sheets parked his patrol unit in a position behind the cruiser. Captain Short's vehicle was in front and to the side of the Land Cruiser. Simultaneously the officers approached the vehicle on each side, knocked on the window and ordered occupants [sic] to roll down his window. The Deputy claims to have smelled an odor of marijuana. He removed the passenger and did a pat down search. Later the officer searched the vehicle finding marijuana under four . . . ounces.

---

[2]Short testified that the vehicle was parked some distance from the restaurant's entry which seemed odd to him.

[3]The officer also testified to seeing an exchange of a $50 bill. How he could do so at night while sitting in a different vehicle went unexplained.

3

8. Neither party consented to the search.

9. Captain Short never observed any illegal activity or illegal substance prior to ordering the two Deputies to make contact with the occupants.

These findings depict a situation wherein a peace officer, charged with watching for alcohol related violations and other criminal offenses, saw Hurst sitting alone in a parked car at 10:40 at night waiting for Donelson. The officer also saw 1) Donelson arrive in the Land Cruiser and park next to Hurst, 2) Hurst leave his vehicle and enter that of Donelson's, 3) Donelson secure a backpack from the rear of his car, and 4) Donelson repeatedly remove items from the backpack and place them on the center console of the vehicle. Assuming *arguendo* that these circumstances were insufficient to create probable cause to believe a crime was in progress, they nevertheless were unusual given the time and place. And, to an officer charged with conducting surveillance in the area for alcohol related and other offenses, they were reminiscent of those performed in a drug transaction. Given that, Short had reasonable suspicion to believe criminal activity was afoot. *See Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.–Amarillo 2002, no pet.) (defining reasonable suspicion as the presence of articulable facts which, when combined with rational inferences therefrom, would allow an officer to reasonably suspect that a particular person has engaged, or is or soon will be engaging, in criminal activity); *State v. Jennings*, 958 S.W.2d 930, 933 (Tex. App.–Amarillo 1997, no pet.) (stating that reasonable suspicion arises when the circumstances depict the occurrence of unusual activity, the existence of a nexus between the detainee and the activity, and the likeness of the unusual activity to a crime).

That Short did not specifically see any contraband or illegal activity matters not for innocent activity may itself give rise to reasonable suspicion. *Woods v. State*, 956 S.W.2d

4

33, 38-39 (Tex. Crim. App. 1997). Indeed, the totality of the circumstances are determinative, *State v. Garcia-Cantu*, 253 S.W.3d 236, 244 (Tex. Crim. App. 2008); *State v. Jennings*, *supra*, even those which when viewed independently of each other could be indicative of innocent action. As stated in *Woods*, the possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal activity. *Woods v. State*, 956 S.W.2d at 37. It is "the principal function of [the officer's] investigation . . . to resolve that very ambiguity and establish whether the activity is in fact legal or illegal." *Id.* And, to facilitate that determination, the officer has the authority to temporarily detain those engaged in the conduct. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). And, once the officer witnessing the activity gathers facts sufficient to create reasonable suspicion, we know of nothing that prohibits him from having other law enforcement personnel undertake the investigation. Short had and did as much here. Thus, the officers were allowed to temporarily detain Donelson and Hurst by parking behind them to investigate whether criminal activity was occurring.

Additionally, approaching the Land Cruiser and directing Donelson to lower his window was activity well within the range of permissible conduct once reasonable suspicion to investigate arose; indeed, making contact with the detainee is often the best way to secure information needed to resolve the ambiguity mentioned in *Woods*. Once Donelson lowered his window and the officer purported to smell marijuana, probable cause arose to believe a crime was occurring within the vehicle, and we so hold as a matter of law. In

5

concluding otherwise the trial court erred, which error lead to improperly denying the application for forfeiture.[4]

Again, we note that a trial court may well opt to disbelieve the testimony of any witness, whether controverted or not. *State v. Ramirez*, 246 S.W.3d at 289. Yet, that truism has little importance here since our decision is founded upon the facts which the trial court found to exist. So, we are not engaging in any effort to re-weigh the evidence or resolve credibility issues. Instead, we merely applied the law to the facts, which we may do *de novo*. *Guzman v. State*, 955 S.W.2d at 89.

Accordingly, we reverse the judgment of the trial court and remand the proceeding.

Brian Quinn
Chief Justice

Hancock, J., dissents.

---

[4]We note that Donelson also argues that forfeiture of his Land Cruiser would amount to excessive punishment and violate the 8th Amendment of the United States Constitution. Yet, the argument was not raised below. Moreover, and unlike the circumstances in the case upon which he relies, *i.e. One Car, 1996 Dodge X-Cab Truck White in Color 5YC-T17 VIN 3B7HC13Z5TG163723 v. State*, 122 S.W.3d 422, 427 (Tex. App.–Beaumont 2003, no pet.), the vehicle's involvement in the drug deal was not incidental here. Donelson not only used his Land Cruiser to transport the marijuana across state lines but also to provide the locale from which to consummate the drug sales to at least one high school student.