# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 21, 2018 Session

## JOHN PATRICK KONVALINKA, JR. v. CRAIG FULLER ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 12C211  Robert E. Lee Davies, Senior Judge**

_____

### No. E2017-00493-COA-R3-CV

_____

In this retaliatory discharge action, the plaintiff filed suit against his former employer under both the common law and the Tennessee Public Protection Act. *See* Tenn. Code Ann. § 50-1-304 (2014). The plaintiff claimed that he was terminated for voicing his concerns about, or refusing to participate in, illegal activities. The former employer moved for summary judgment arguing, in part, that the plaintiff could not identify a specific illegal activity or a violation of a clearly established public policy. The trial court granted the summary judgment motion and dismissed the plaintiff's claims. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON II, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, John Patrick Konvalinka, Jr.

Rosemarie L. Hill and Justin L. Furrow, Chattanooga, Tennessee, for the appellees, Craig Fuller, TransCard, LLC, Ryan Rogers, and Max Fuller.

# OPINION

## I.

Many of the underlying facts are undisputed.[1]  On January 5, 2009, John Patrick Konvalinka, Jr. began working at TransCard, LLC as the director of corporate sales. TransCard provided prepaid debit card services to clients, including corporations, banks, and government entities.  During Mr. Konvalinka's employment, Max and Craig Fuller owned and managed TransCard.  Craig Fuller served as chief executive officer of the company.

Max Fuller also had a partial ownership interest in a separate company, U.S. Xpress, Inc.  In 2010, he asked Ryan Rogers, vice president of treasury and finance for U.S. Xpress, to become the chief strategy officer for TransCard.  Mr. Rogers was never employed by TransCard; he remained at all times an employee of U.S. Xpress.  Max Fuller tasked Mr. Rogers with improving TransCard's operations, efficiencies, quality control, and financial performance.  Mr. Rogers's responsibilities included things such as "reviewing the accounting, finance [and] cash flow of the business" and ensuring that projects for TransCard clients were "set up properly and completed properly and clean, with as few errors as possible."

Shortly after beginning his new job responsibilities, Mr. Rogers met with Mr. Konvalinka to discuss TransCard's operations.  At the time, Mr. Konvalinka worked primarily in sales.  According to Mr. Konvalinka, Mr. Rogers invited him to disclose any problems he perceived in the company's operations.  Mr. Rogers assured him that he could speak freely because there would be no repercussions from his disclosures.  During this meeting, Mr. Konvalinka reported a number of activities or procedures that he believed were illegal, noncompliant, or simply inefficient.  Mr. Rogers thanked him for his "candid and informative" input and promised to address his concerns.

Mr. Rogers recommended that Mr. Konvalinka move from sales to a business analyst position.  The business analyst position focused on improving various aspects of TransCard's operations.  Mr. Konvalinka reported to Mr. Rogers and "essentially [did] whatever [Mr. Rogers] instructed [him] to do."  According to Mr. Konvalinka, he also continued to handle his previous card management duties and to assist with sales.

As a business analyst, Mr. Konvalinka repeatedly voiced his concerns about the company's operations to Mr. Rogers, other members of management, and his co-workers.

---

[1] Except as otherwise indicated, the facts are taken from the plaintiff's response to the statement of undisputed material facts.  In some instances, the facts are undisputed only for the purposes of ruling on the motion for summary judgment.  *See* Tenn. R. Civ. P. 56.03.

Mr. Konvalinka agreed that the company took steps to correct some of the deficiencies he identified. His main concerns, as later outlined in his complaint, were

1. TransCard action and inaction running afoul of the US Patriot Act;
2. Violations of and/or non-compliance with the Payment Card Industry Security Standards Regulations;
3. Non-compliance with or violation of SAS 70 Type II card industry auditing standards;
4. TransCard action and/or inaction in violation of contracts with sponsors, partners, clients, and network associations;
5. TransCard actions and inactions constituting non-compliance with or violation of cardholder agreements;
6. Insurance fraud related to misrepresentations made by Craig Fuller;
7. False deposit, account balance and financial verification provided to sponsoring banks;
8. Affirmative instruction given to TransCard employees by TransCard executives in attempt to misrepresent, conceal or fabricate specifics regarding TransCard financials, operations and industry compliance, the purpose and design of which was to avoid or alleviate concerns of clients, auditors, and/or company owners;
9. Providing incorrect financial figures to prospective investors and clients;
10. Improper use of MasterCard symbols; [and]
11. Coercion and/or intimidation of TransCard staff and employees to perform tasks which they considered unethical, illegal, inappropriate and/or improper.

Mr. Konvalinka also discussed his concerns with an outside attorney. Following his attorney's suggestion, on January 20, 2011, Mr. Konvalinka memorialized his concerns in a written memorandum that he gave to Mr. Rogers. In large part, his memorandum reflected the same eleven concerns.

In July 2011, Mr. Rogers recommended to Craig Fuller that Mr. Konvalinka's employment be terminated. According to Mr. Rogers and Craig Fuller, the decision to terminate Mr. Konvalinka's employment was based on his inadequate job performance. They claimed Mr. Konvalinka was difficult to manage and did not work well with other employees or customers. On July 20, 2011, Craig Fuller informed Mr. Konvalinka that his employment was terminated.

3

In the Circuit Court for Hamilton County, Tennessee, Mr. Konvalinka filed a complaint and an amended complaint against TransCard, Ryan Rogers, Craig Fuller, and Max Fuller alleging multiple causes of action.[2] Mr. Konvalinka alleged that his employment was terminated "because of [his] refusal to participate in or remain silent about illegal practices and policies being exercised . . . by TransCard." Relevant to this appeal, the complaint sought damages from TransCard for common law retaliatory discharge and violation of the Tennessee Public Protection Act ("TPPA"). *See* Tenn. Code Ann. § 50-1-304 (2014).

TransCard, along with the other defendants, moved for summary judgment on multiple grounds relying on deposition testimony and Mr. Konvalinka's discovery responses. TransCard argued that Mr. Konvalinka could not establish a prima facie case of retaliatory discharge under the common law or the TPPA and that Mr. Konvalinka could not demonstrate that TransCard's proffered reason for his termination was a pretext. In opposition, Mr. Konvalinka submitted an affidavit from a former co-worker and additional deposition testimony.

The trial court dismissed the plaintiff's claims, concluding that TransCard was entitled to judgment as a matter of law for three reasons. First, the court found that Mr. Konvalinka failed to identify an illegal activity within the meaning of the TPPA or a clear violation of a well-defined and established public policy as required for a common law retaliatory discharge claim. Second, he did not report the alleged wrongdoing to an outside person or entity. Third, the record contained no evidence that Mr. Konvalinka feared dismissal or was threatened with dismissal for reporting illegal activities.

## II.

Although his appeal primarily concerns the grant of summary judgment, Mr. Kovalinka also raises as an issue the trial court's denial of a motion to compel discovery. During discovery, he requested production of numerous documents, including: copies of all "SAS 70 reports" and "compliance documents" for the previous five years; copies of all contracts with sponsoring banks; network associations, and cardholders for the same time period; copies of all contracts between TransCard and 67 listed companies for a three year period; internal email communications from 2008 to the

---

[2] In addition to the retaliatory discharge claim, the complaint included claims against the company for breach of contract and vicarious liability and a civil conspiracy claim against the individual defendants. The trial court dismissed both the breach of contract and vicarious liability claims on a motion to dismiss. Mr. Konvalinka does not challenge the dismissal of these claims on appeal. The court granted the defendants summary judgment on the civil conspiracy claim, which Mr. Konvalinka describes as being predicated on the two claims addressed in this appeal. He offers no argument on the dismissal of the civil conspiracy claim, so we consider that issue waived. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006).

4

present; and copies of customer verifications during Mr. Konvalinka's employment. TransCard objected to these requests, and others, as irrelevant and unduly burdensome.

Mr. Konvalinka then filed a motion to compel. In a temporary order, the trial court denied the motion, in part, ruling that the documents described above were irrelevant. But the court expressly stated that "[u]pon request by either party, the Court will revisit the issues making the basis of this Temporary Order following the completion of additional discovery, including depositions."

The temporary order was filed on January 7, 2014. TransCard moved for summary judgment on December 30, 2016, over two years later. During this time, Mr. Konvalinka never asked the trial court to revisit the temporary order. We conclude that he has waived his right to pursue this issue on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Parties are not entitled to relief on appeal if they "failed to take whatever steps were reasonably available to cure an error." *Id.* 36(a) cmt. Perhaps as importantly, Mr. Konvalinka, in response to the motion for summary judgment, did not request a delay so that further discovery could be conducted. *See* Tenn. R. Civ. P. 56.07.

## III.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

Here, the party moving for summary judgment does not bear the burden of proof at trial. Thus, the burden of production on summary judgment could be satisfied "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015); *see also* Tenn. Code Ann. § 20-16-101 (Supp. 2018). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Rye*, 477 S.W.3d at 264.

5

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

A.

Tennessee is an employment-at-will state. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). The employment-at-will doctrine preserves the "right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." *Id.* But Tennessee law also recognizes certain restrictions on an employer's right to terminate an at-will employee. *Id.* Mr. Konvalinka has asserted claims under both the common law and the TPPA.[3] While the statutory and common law claims are similar and often examined jointly, they are not identical.[4] *See Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002).

The common law retaliatory discharge cause of action restricts an employer's ability to discharge an employee-at-will "for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy." *Stein*,

---

[3] Effective July 1, 2014, the TPPA was amended to preclude a plaintiff such as Mr. Konvalinka from seeking recovery under both the common law and the TPPA for retaliatory discharges based on the refusal to remain silent about, or participate in, illegal activities. *See* Tenn. Code Ann. § 50-1-304(g) ("This section abrogates and supersedes the common law with respect to any claim that could have been brought under this section."); *Williams v. City of Burns*, 465 S.W.3d 96, 109 n.11 (Tenn. 2015). Because this case accrued before July 1, 2014, Mr. Konvalinka could pursue both remedies. *See Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002) (holding that previous version of TPPA did not preempt the common law tort remedy for retaliatory discharge claims).

[4] The TPPA differs from the common law in two respects. The TPPA includes public employees within its protection and has a more stringent causation standard. *Williams*, 465 S.W.3d at 110.

945 S.W.2d at 717. This cause of action "defines the balance point between the employment-at-will doctrine and rights granted employees under well-defined public policy." *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 556 (Tenn. 1993), *overruled on other grounds by Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73 (Tenn. 2012). Often called the public policy exception, it protects an at-will employee's right to "tak[e] an action that public policy encourages or . . . [to] refus[e] to do something that is inconsistent with public policy." *Williams v. City of Burns*, 465 S.W.3d 96, 109 (Tenn. 2015). But the exception must be narrowly construed to prevent it from "consum[ing] or eliminat[ing] the general rule." *Chism v. Mid-S. Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988).

Our courts have repeatedly emphasized that a retaliatory discharge claim requires evidence of a well-defined, unambiguous, and clearly expressed public policy. *See id.*; *Stein*, 945 S.W.2d at 717. Courts do not establish public policy. *Stein*, 945 S.W.2d at 717. Legislatures do. *Id.* We will not "engage in hypothetical guessing" or look to common law to discern public policy. *Id.* Public policy in Tennessee is usually "evidenced by an unambiguous constitutional, statutory or regulatory provision." *Chism*, 762 S.W.2d at 556. Examples of cases in which the employee's discharge violated a clearly defined public policy include an employee who was discharged for refusing to commit perjury or for honoring a lawful subpoena. *See id.* (citing examples). Beyond these obvious examples, our courts have required identification of "very specific statutory violations" that personally exposed the employee to possible civil or criminal sanctions. *Id.*

The TPPA also restricts an employer's ability to terminate at-will employees. Tenn. Code Ann. § 50-1-304. The TPPA prohibits the discharge of an employee "solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Id.* § 50-1-304(b). An illegal activity is defined by the TPPA as an "activit[y] that [is] in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Id.* § 50-1-304(a)(3).

The TPPA "essentially codified the common-law cause of action for retaliatory discharge." *Williams*, 465 S.W.3d at 110. "[U]nder both the statute and the common law, the plaintiff must assert that his or her whistleblowing activity 'serves a public purpose [that] should be protected.'" *Guy*, 79 S.W.3d at 537 n.4 (Tenn. 2002) (quoting *Wagner v. City of Globe*, 722 P.2d 250, 257 (Ariz. 1986)). It is not enough for a plaintiff to show that the employer violated a law or regulation. *See Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 533 (Tenn. Ct. App. 2006). The plaintiff must also demonstrate that the illegal activity implicated important public policy concerns. *Id.*

A successful common law retaliatory discharge claim requires proof of four elements: (1) an employment-at-will relationship; (2) termination of employment; (3) the employee was discharged because of an attempt to exercise a statutory or constitutional

right, or the discharge was motivated by "any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and" (4) the improper motive was a substantial factor in the employer's decision. *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002). Similarly, under the TPPA, a plaintiff bears the burden of proving: (1) employment status; (2) his or her refusal to participate in or remain silent about illegal activity; (3) discharge; and (4) "the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011).

B.

Although TransCard moved for summary judgment on multiple grounds, we conclude that one ground is dispositive. Mr. Konvalinka was required to demonstrate that his discharge violated a clear public policy for his common law claim or was based on his refusal to participate in or remain silent about an illegal activity as defined by the TPPA. *See Franklin*, 210 S.W.3d at 528 (noting the similarities between these elements). He cannot establish these elements "simply by claiming that he believed his employer's actions were 'wrong' or against 'public policy.'" *Sanders v. Henry Cty.*, No. W2008-01832-COA-R3-CV, 2009 WL 1065916, at *8 (Tenn. Ct. App. Apr. 21, 2009). Rather, he must identify a specific statutory or regulatory provision that was implicated by his employer's conduct. *See Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 788-89 (Tenn. 2010) (discussing identification requirement); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997) (concluding that plaintiff's identification of specific code violations was sufficient evidence of illegal activities).

On appeal and in the court below, Mr. Konvalinka contended that TransCard was estopped from arguing that he failed to identify a specific violation because of the "contrary" position TransCard took during discovery. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315 (Tenn. 2009) (clarifying that when a "party is attempting to gain an unfair advantage by maintaining inconsistent legal positions," equitable estoppel applies). We conclude that equitable estoppel does not apply here because TransCard never took inconsistent positions in this litigation. *See id.* at 316 (concluding that equitable estoppel did not apply when defendants had not taken inconsistent positions). During discovery, TransCard maintained that Mr. Konvalinka was not required to prove that TransCard actually violated the law, but only that he had reasonable cause to believe that the law had been violated. We agree. *See Mason*, 942 S.W.2d. at 472 (holding that the TPPA's protection "extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it"). Even so, Mr. Konvalinka was still required to identify a specific statute or regulation that he believed was violated. *See Sanders*, 2009 WL 1065916, at *8 (rejecting similar argument).

8

The issue before us is not whether the identified law was violated but whether the plaintiff can show that an "important public policy interest embodied in the law has been furthered by [his actions]." *Guy*, 79 S.W.3d at 538 (quoting *Gutierrez v. Sundancer Indian Jewelry*, 868 P.2d 1266, 1273 (N.M. 1993)). The identification requirement operates to limit "the retaliatory discharge cause of action to only those cases in which a discharge violates public policy." *Gossett*, 320 S.W.3d at 789; *see also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992) (expressly limiting the retaliatory discharge cause of action in Tennessee to those cases "where an employer violates a clear public policy evidenced by an unambiguous statutory provision"). To succeed, Mr. Konvalinka needed to identify the unambiguous constitutional, statutory, or regulatory provision that was implicated here. *See VanCleave v. Reelfoot Bank*, No. W2008-01559-COA-R3-CV, 2009 WL 3518211, at *4 (Tenn. Ct. App. Oct. 30, 2009) (seeking identification of specific statutory or regulatory provision for either common law claim or TPPA claim).

The only constitutional, statutory, or regulatory provision identified by Mr. Konvalinka in the trial court was his general allusion to the USA Patriot Act. *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, Pub. L. No. 107-56, 115 Stat 272 (2001) (codified in scattered sections of the U.S. Code). The remaining "violations" he reported involved questionable business practices, breaches of contracts, or failure to comply with industry standards established by private organizations.[5] These violations do not implicate public policy or constitute illegal activities under the TPPA. *See Burnett v. Am.'s Collectibles Network, Inc.*, No. E2009-00591-COA-R3-CV, 2010 WL 669246, at *7 (Tenn. Ct. App. Feb. 25, 2010) (holding complaints about use of company time and resources did not rise to the level of a public concern); *Gager v. River Park Hosp. and Se. Emergency Servs., P.C.*, No. M2007-02470-COA-R3-CV, 2009 WL 112544, at *7 (Tenn. Ct. App. Jan. 14, 2009) (concluding that complaints about company policy did not trigger a common law retaliatory discharge claim); *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 345 (Tenn. Ct. App. 1997) (holding corporate management dispute did not implicate public policy); *Robins v. Flagship Airlines, Inc.*, 956 S.W.2d 4,

---

[5] What Mr. Konvalinka referred to as the "Payment Card Industry Security Standard Regulations" was promulgated by a private organization founded by the major credit card companies. *See* About Us, PCI SECURITY STANDARDS COUNCIL, https://www.pcisecuritystandards.org/about_us/ (last visited May 14, 2019); PCI SECURITY STANDARDS COUNCIL LLC, PAYMENT CARD INDUSTRY SECURITY STANDARDS, STANDARDS OVERVIEW (2008), https://www.pcisecuritystandards.org/pdfs/pcissc_overview.pdf. Although Mr. Konvalinka argues that these standards "provide a comprehensive method whereby third party providers such as TransCard can insure [sic] that they are in compliance with governmental regulations," he provides no authority for his contention. Similarly, the "SAS 70 Type II card industry auditing standards" were published by another private organization, the American Institute of Certified Public Accountants. *See Standards and Statements*, AICPA, https://www.aicpa.org/research/standards.html (last visited May 14, 2019). Mr. Konvalinka has not cited to a federal or state law or regulation requiring TransCard to comply with these standards.

7 (Tenn. Ct. App. 1997) (determining that discharged employee's complaints that the maintenance department was poorly run "do not even approach the subject of statutory or regulatory violations").

As for the USA Patriot Act, Mr. Konvalinka did not provide specific citations to provisions that were violated or allege the particular activities that were prohibited by the law. In his complaint, he merely alleged that TransCard through its "action[s] and inaction[s] r[an] afoul of the US Patriot Act." The USA Patriot Act is more than 90 pages in length and includes 165 sections covering a variety of subjects. *See* Charles Doyle, *USA Patriot Act: A Sketch*, CRS REPORT FOR CONGRESS (2002), https://fas.org/irp/crs/RS21203.pdf. Mr. Konvalinka later explained that TransCard violated "the part about knowing your customer and verifying them with the Office of Foreign Asset Control."[6] But he did not know whether the Patriot Act required an entity such as TransCard to verify customers with OFAC.[7]

This case is similar to the scenario presented in *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988). In *Chism*, the plaintiff claimed he was discharged for insisting that his employer comply with the Internal Revenue Code. 762 S.W.2d at 554. No specific section of the Code was referenced in the complaint. *Id.* Rather, the complaint detailed various actions by the employer that the plaintiff believed to be in

---

[6] OFAC is an office within the U.S. Treasury Department that administers and enforces economic sanctions against foreign countries, entities, and individuals as mandated by our foreign policy and national security. About, U.S. DEPARTMENT OF THE TREASURY (2009) https://www.tresury.gov/about/organizational-structure/offices/pages/office-of-foreign-assets-control.aspx (last updated Apr. 5, 2019). OFAC maintains a list on its website of "blocked persons, blocked vessels, specially designated nationals, specially designated terrorists, specially designated global terrorists, foreign terrorist organizations, and specially designated narcotics traffickers whose property and interests in property are blocked pursuant to the various economic sanctions programs administered by OFAC." 31 C.F.R. § Ch. V, App. A (2018). Section 326 of the USA Patriot Act directed the Secretary of the Treasury to issue regulations requiring financial institutions to implement customer identification programs. 31 U.S.C. § 5318(*l*) (Supp. 2018). A procedure for comparing new customers to OFAC's list of known or suspected terrorists is a mandatory component of a customer identification program. 31 U.S.C. § 5318(*l*)(2)(C). But only specific types of financial institutions, such as banks, are required to implement these programs. *See* 31 C.F.R. §§ 1020.220, 1026.220, 1024.220; *see generally* 31 C.F.R. § 1010.100(t) (defining financial institutions).

[7] In his appellate brief, Mr. Konvalinka belatedly attempted to identify the specific statutory and regulatory provisions he believed were violated. Because he failed to identify these statutory and regulatory provisions in the trial court, we decline to consider them on appeal. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court."). To establish his retaliatory discharge claims, Mr. Konvalinka was required to identify the specific statutes and regulations at issue. *See Gossett*, 320 S.W.3d at 788-89. The proper time to come forward with these provisions was when he was confronted with a motion for summary judgment based on a failure to identify the specific statutes and regulations at issue. *See Bradley v. McLeod*, 984 S.W.2d 929, 932 (Tenn. Ct. App. 1998) ("[S]ummary judgment motions should not be taken lightly.").

10

violation of the Internal Revenue Code. *Id.* Emphasizing that this exception to the employment-at-will doctrine is a narrow one, the supreme court concluded that the plaintiff's general reference to the Internal Revenue Code was insufficient. *Id.* at 556. "[T]o state a claim for relief for this very exceptional tort action, the pleader must show clear violation of some well-defined and established public policy." *Id.* While Tennessee's general public policy favors obeying the tax laws, "facts more specific and clear" were required to state a claim for retaliatory discharge. *Id.* at 557.

Likewise, Mr. Konvalinka has alleged that he was discharged for insisting that TransCard comply with the USA Patriot Act. But he did not identify a specific statute or regulation that he believed had been violated, and he merely assumed that the USA Patriot Act required TransCard to verify its customers with OFAC. As our supreme court has stated, "[m]ere generalizations and conclusions . . . will not suffice." *Id.* Our courts have emphasized that the retaliatory discharge cause of action is a narrow exception to the employment-at-will doctrine. *Stein*, 945 S.W.2d at 717 & n.3; *Franklin*, 210 S.W.3d at 530. We will only interfere with an employer's right to terminate an at-will employee when the employer's decision violates a clear mandate of public policy. *Chism*, 762 S.W.2d at 556. Mr. Konvalinka's proof falls short. *See, e.g.*, *Whitaker v. Verizon Wireless*, No. 2:10-CV-260, 2012 WL 4507725, at *14 (E.D. Tenn. Sept. 28, 2012) (concluding that the plaintiff did not meet burden of proof by alleging a violation of the "laws of Tennessee"); *Clark v. Hoops, LP*, 709 F. Supp. 2d 657, 670 (W.D. Tenn. 2010) (determining that general reference to "continual violation of building and safety codes" was insufficient); *Little v. Keystone Continuum, LLC*, No. 3:07-0241, 2008 WL 2901854, at *5 (M.D. Tenn. July 22, 2008) (concluding that the plaintiff "failed to link any of that conduct with any criminal or civil code or any regulation"); *Williams v. Columbia Hous. Auth.*, No. M2007-01379-COA-R3-CV, 2008 WL 4426880, at *5 (Tenn. Ct. App. Sept. 30, 2008) (noting that plaintiff did not specify which HUD regulations the defendant allegedly violated).

We conclude that TransCard was entitled to judgment as a matter of law because Mr. Konvalinka failed to identify a specific statutory or regulatory provision that he believed had been violated or would be violated. *See Chism*, 762 S.W.2d at 556; *Mason*, 942 S.W.2d at 472. "This omission is fatal" *Quinn-Glover v. Reg'l Med. Ctr. at Memphis*, No. W2011-00100-COA-R3-CV, 2012 WL 120209, at *10 (Tenn. Ct. App. Jan. 17, 2012). The trial court properly dismissed his retaliatory discharge claims under the common law and the TPPA.

## IV.

For both his common law retaliatory discharge claim and his TPPA claim, Mr. Konvalinka was required to identify a specific statutory or regulatory provision that he believed had been violated by TransCard. Because he failed to do so, TransCard was entitled to summary judgment in its favor. So we affirm the dismissal of his claims.

_____

W. NEAL McBRAYER, JUDGE