NO. 07-08-0511-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 FEBRUARY 1, 2010

 ______________________________

 RANDY ERIC MORGAN, APPELLANT

 V.

 THE STATE OF TEXAS, APPELLEE

 _________________________________

 FROM THE COUNTY COURT AT LAW NO. 1 OF POTTER COUNTY;

 NO. 121,814; HONORABLE W.F. (CORKY( ROBERTS, JUDGE

 _______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 OPINION

 Appellant, Randy Eric Morgan, pled guilty to possession of marihuana
in an amount of two ounces or less, a Class B misdemeanor,[1] and was
sentenced to confinement in the Potter County Detention Center for 150 days
and fined $400.. In a single issue, Appellant asks whether the trial court
erred by denying his motion to suppress evidence of marihuana discovered in
his vehicle. We affirm.

 BACKGROUND

 On April 22, 2008, Appellant was charged with possession of a useable
quantity of marihuana in the amount of two ounces or less. On September
12, 2008, Appellant filed a motion to suppress evidence of marihuana found
in his Sport Utility Vehicle (SUV) in plain view during a safety search by
Officer James Clements.

 At the suppression hearing, the primary issue was whether Officer
Clements had reasonable suspicion to detain Appellant for investigatory
purposes prior to discovering the marihuana. The State(s first witness was
Officer Douglas Glick. Since 1996, Officer Glick served as the Amarillo
Police Department(s school liaison officer at Caprock High School. In this
capacity, he spoke with students on a daily basis and, over the years,
determined the credibility of certain students based upon the reliability
of information they provided.

 During the latter part of March and early April 2008, the school was
experiencing gang-related problems. Students had been involved in fights
between alleged gang members and groups from outside the school campus. On
March 31, Officer Glick responded to a call describing a large fight with a
gathering of approximately 200 students in the parking lot of the school(s
activity center. He dispersed the crowd.[2] Later, the next day on April
1, his student sources reported witnessing a fight between Appellant (a
former student) and another person in the parking lot of the activity
center on March 31.

 On April 2, Officer Glick received reports from students that a
second fight would take place off campus at Glenwood Park. His student
sources, who witnessed the fight on March 31, told Officer Glick that
Appellant would be fighting on April 2 and 3. His sources asked to remain
anonymous because they feared gang retaliation.

 There were no reported fights on April 2. However, on April 3,
Officer Glick investigated an assault on two students. One student was
discovered unconscious, lying in the street. His injuries were serious and
an ambulance was called. Although he suspected the students had been
assaulted by Northside gang members, the victims were uncooperative.
Shortly thereafter, he began hearing rumors that a big gang-related fight
would be taking place after school the next day at Glenwood Park. His
sources reported that Appellant would again be a participant.

 When Officer Glick arrived at school on April 4, students approached
him with reports that Northside gang members were coming to the school to
shoot people.[3] He was told that, if he attempted to intervene, he would
also be shot. After hearing the rumors, he sought out sources he knew to
be credible based on his past experience. He spoke with students, gang
members, and administrators. His sources verified the reports and
indicated that Appellant and another person would be involved in the fight.

 Based upon this information, Officer Glick met with school
administrators and members of the Amarillo Police Department (APD). He had
a sense of urgency because of the serious assault that occurred the day
before and reports that weapons would be involved. He told school
administrators and APD officers that he had received reports a fight would
take place that day at school between Northside and Eastside gang members.
He also informed them there was the threat of weapons and shootings taking
place at the school. Based upon his investigation, he requested APD(s
assistance.

 APD responded with marked and unmarked patrol cars, motorcycle units,
and liaison officers from other schools. Along with high school
administrators, they positioned themselves around the school perimeter
along adjacent streets. From his vantage point, an assistant principal
observed Appellant(s SUV driving on a street immediately adjacent to the
school. He radioed Officer Glick.

 Because of the timing of Appellant(s appearance, his reported
involvement in the March 31 fight on campus, the serious assault that
occurred April 3, and the consistency and frequency with which Appellant(s
name was mentioned by credible sources as being involved in recent violence
at the high school, Officer Glick radioed officers keeping watch over the
school perimeter and asked them to stop Appellant. He requested that they
identify him and find out what he was doing in the area.

 Officer Clements was parked on the school perimeter looking for any
unusual activity that might indicate possible gang activity or fights.
After receiving Officer Glick(s call, he spotted and proceeded to stop
Appellant(s SUV. He believed the stop was gang-related and there might be
weapons involved. Although Officer Clements pulled behind Appellant(s SUV
and activated the emergency beacons on his motorcycle, Appellant continued
traveling. Officer Clements considered this to be suspicious behavior. He
also noticed Appellant making furtive movements(moving his right hand
rapidly as though, in his experience, Appellant may have been attempting to
gain access to a weapon or hide some object.

 Appellant came to a stop two blocks from the school. Officer Clements
approached the SUV and removed Appellant from the vehicle. Because he was
concerned Appellant(s furtive movements may have been intended to conceal a
weapon, he handcuffed Appellant and patted him down. According to Officer
Clements, Appellant was not placed under arrest but was merely being
detained for further investigation. After Officer Clements turned
Appellant over to Officer Ed Carroll, he returned to the SUV to search the
interior driver(s side for weapons and observed a clear plastic baggie
tucked between the front driver(s seat and the console. He also observed a
marihuana cigarette in the SUV(s door handle.

 Officer Carroll walked Appellant to the patrol car and asked
Appellant(s name. Appellant identified himself and then, without
questioning, said, (I(ll be honest with you, I have marihuana in the
vehicle.( After placing Appellant in the backseat of the patrol car,
Officer Carroll approached Officer Clements who had already located the
marihuana in the SUV. Officer Carroll returned to the patrol car and
placed Appellant under arrest for possession of marihuana. He asked
Appellant why he was at the high school and Appellant responded he was
there to pick up a friend.[4] Subsequently, the trial court denied
Appellant(s motion to suppress.

 On November 21, 2008, Appellant entered his guilty plea in open court
while preserving his right to appeal the trial court(s ruling on his motion
to suppress. Thereafter, he was sentenced and this appeal followed.

 Discussion

 Appellant asserts Officer Clements improperly detained him for
investigatory purposes because the officers lacked reasonable suspicion to
detain him. He contends that, because his initial detention was improper,
the trial court should have excluded the marihuana discovered in his SUV as
the (fruit of the poisonous tree.(

 I. Standard of Review

 A trial court(s ruling on a motion to suppress is reviewed for abuse
of discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App.
2002); Hudson v. State, 247 S.W.3d 780, 783 (Tex.App.(Amarillo 2008, no
pet.). In reviewing a trial court(s determination of the reasonableness of
a temporary investigative detention, appellate courts use a bifurcated
standard of review. Ford v. State, 158 S.W.3d 488, 493 (Tex.Crim.App.
2005). Almost total deference is given to a trial court(s determination of
the historical facts that the record supports especially when the trial
court(s fact findings are based on an evaluation of credibility and
demeanor. St. George v. State, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007);
Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The same level of
deference is also afforded to a trial court(s ruling on application of law
to fact questions or mixed questions of law and fact if the resolution of
those questions also turns on an evaluation of credibility and demeanor.
Montanez v. State, 195 S.W.3d 101, 108-09 (Tex.Crim.App. 2006). However,
if mixed questions of law and fact do not fall within these categories,
appellate courts may conduct a de novo review of the trial court(s ruling.
Guzman, 955 S.W.2d at 87.

 When, as here, no findings of fact were requested nor filed, we view
the evidence in the light most favorable to the trial court(s ruling and
assume the trial court made implicit findings of fact supported by the
record. See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). If
the trial court(s decision is correct on any theory of the law applicable
to the case, it will be sustained. Armendariz v. State, 123 S.W.3d 401, 404
(Tex.Crim.App. 2003); Ross, 32 S.W.3d at 855-56. Further, the legal
question of whether the totality of the circumstances is sufficient to
support an officer(s reasonable suspicion underlying an investigatory
detention is reviewed de novo. See State v. Sheppard, 271 S.W.3d 281, 286-
87 (Tex.Crim.App. 2008); Kothe v. State, 152 S.W.3d 54, 62-63
(Tex.Crim.App. 2004).

 Further, we interpret Appellant(s rights under Article I, Section 9 of
the Texas Constitution consistently with the interpretation of his Fourth
Amendment rights under the federal constitution by the United States
Supreme Court and the Texas Court of Criminal Appeals. Sargent v. State,
56 S.W.3d 720, 724 n.2 (Tex.App.(Houston [14th Dist.] 2001, pet. ref(d).
Accordingly, the standard for investigative stops is the same under the
Texas Constitution as under the United States Constitution. See Rhodes v.
State, 945 S.W.2d 115, 117 (Tex.Crim.App.), cert. denied, 552 U.S. 894, 118
S.Ct. 236, 139 L.Ed.2d 167 (1997).

 The threshold question we must determine is whether Officer Clements(s
stop of Appellant was an investigatory detention or an arrest because the
nature of the detention determines the constitutional parameters which
apply to its legality. An investigatory detention is distinguishable from
a custodial arrest, and the use of handcuffs does not automatically convert
a temporary detention into a Fourth Amendment arrest. Sheppard, 271 S.W.3d
at 289. An investigatory detention, to be constitutionally valid, may be
founded upon a reasonable, articulable suspicion that the person detained
is connected with criminal activity, whereas an arrest, to pass
constitutional muster, must be supported by the greater conclusiveness of
probable cause to believe that the person detained has committed or is
committing an offense. Amores v. State, 816 S.W.2d 407, 411 (Tex.Crim.App.
1991).

 II. Investigative Detention

 A police officer may stop and briefly detain a person for
investigative purposes if, under the totality of the circumstances, the
officer has reasonable suspicion supported by articulable facts that the
person detained is, has been, or soon will be engaged in criminal activity.
 Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
Ford, 158 S.W.3d at 492. An investigative detention occurs when an
individual is confronted by a police officer, yields to the officer(s
display of authority, and is temporarily detained for purposes of an
investigation. Johnson v. State, 912 S.W.2d 227, 235-36 (Tex.Crim.App.
1995). Whether reasonable suspicion exists is determined by considering
the facts known to the officer at the moment of detention, and simple
subjective good faith alone is not enough. Davis v. State, 947 S.W.2d 240,
243 (Tex.Crim.App. 1997).

 Prior to initiating an investigative detention, an officer must have
reasonable suspicion to believe that an individual is involved in criminal
activity. Balentine, 71 S.W.3d at 768. The (reasonableness( of a
temporary detention must be examined in terms of the totality of the
circumstances and will be justified when the detaining officer has
specific, articulable facts, which, when taken together with rational
inferences from those facts, lead him to conclude that the person detained
actually is, has been, or soon will be engaged in criminal activity. Ford,
158 S.W.3d at 492.[5] There is no definitive bright-line test in
evaluating whether an investigative detention is unreasonable. United
States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
 Common sense and ordinary human experience govern over rigid criteria.
Id.

 Whether there is a reasonable suspicion is dependent on both the
content of the information possessed by an officer and its degree of
reliability. Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110
L.Ed.2d 301 (1990). Both (quantity and quality( must be taken into account
and considered in the (totality of the circumstances ( the whole picture(.
Id. (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). The
factual basis for an investigative detention need not arise solely from the
officer(s personal observation but may derive from the collective knowledge
of other officers when there has been some degree of communication between
those officers; Woodward v. State, 668 S.W.2d 341, 344 (Tex.Crim.App. 1982)
(op. on reh(g), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952
(1985), or information supplied by another person such as an informant.
Brother v. State, 166 S.W.3d 255, 259-60 (Tex.Crim.App. 2005), cert.
denied, 546 U.S. 1150, 126 S.Ct. 1172, 163 L.Ed.2d 1129 (2006); Martinez v.
State, 261 S.W.3d 773, 776 (Tex.App.(Amarillo 2008, pet. ref(d). Even
circumstances (which when viewed independently of each other could be
indicative of innocent action( may give rise to reasonable suspicion; State
v. 1998 Toyota Land Cruiser, Oklahoma Tag CMN-633 VIN JT3HT05J9W0007179,
277 S.W.3d 88, 91 (Tex.App.(Amarillo 2009, no pet.), and the possibility of
an innocent explanation does not deprive the officer of the capacity to
entertain reasonable suspicion of criminal activity. See T.L.O., 469 U.S.
at 346; Toyota Land Cruiser, 277 S.W.3d at 91.

 While a tip by an unnamed informant of undisclosed reliability may
justify the initiation of an investigation, such a tip, standing alone,
will rarely establish the requisite level of reasonable suspicion necessary
to justify an investigative detention. Florida v. J.L., 529 U.S. 266, 270,
120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). However, a citizen informant(s
information may provide an officer with reasonable suspicion if the
information is corroborated by further indicia of reliability, i.e., some
additional facts from which a police officer may reasonably conclude that
the tip is reliable and a temporary detention justified. Brother, 166
S.W.3d at 258-59 (citing Alabama v. White, 496 U.S. at 330-31).

 Corroborating information that can give rise to reasonable suspicion
includes details that accurately predict the subject(s future behavior,
link the subject to the alleged criminal activity, or give a particularized
and objective reason to suspect the subject. Glenn v. State, 967 S.W.2d
467 (Tex.App.(Amarillo 1998, pet. dism(d). A citizen(s tip deserves great
weight when there is a detailed description of the wrongdoing along with a
statement that the event was witnessed firsthand; Illinois v. Gates, 462
U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), when a citizen puts
their self in a position to be held accountable for their intervention;
State v. Stolte, 991 S.W.2d 336, 341 (Tex.App.(Fort Worth 1999, no pet.),
the citizen is not connected with law enforcement or a paid informant;
State v. Sailo, 910 S.W.2d 184, 188 (Tex.App.(Fort Worth 1995, pet. ref(d),
or there is sufficient evidence that an informant(s information is reliable
based on a past relationship with law enforcement. See Adams v. Williams,
407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Dixon v. State,
206 S.W.3d 613, 616-17 (Tex.Crim.App. 2006).[6] Although there is no per
se rule requiring independent police corroboration; Dixon, 206 S.W.3d at
618 (collected cases cited therein), when the reliability of the
information is increased, less corroboration is necessary. Stolte, 991
S.W.2d at 341.

 Here, Officer Glick received reports from students of future gang-
related fights possibly involving weapons during the end of March and early
April. Following an incident on March 31, Officer Glick met with students
whom he believed were credible and reliable based on prior information he
had received from them. His student sources identified Appellant as one of
the persons that students had gathered to watch fight in the parking lot of
the school(s activity center. His sources also reported there would be
another fight on April 3 and Appellant would be involved.

 As reported, on April 3, two students were assaulted after lunch and
one student sustained serious injuries. Although Officer Glick suspected
the assaults were gang-related, neither victim would cooperate.
Afterwards, he began receiving reports that a gang-related fight was going
to occur the next day, April 4, and Appellant would again be involved.

 When Officer Glick arrived at school on April 4, students approached
him saying that gang members were coming to the school with weapons to
shoot people, including Officer Glick, if he got in the way. His credible
student sources verified the reports and also reported Appellant would be
involved. At this point, Officer Glick believed he had a credible threat
of violence at the school accompanied by threats of weapons and
shootings(and Appellant would be involved. Based upon these reports, he
coordinated a response among school administrators and the APD.

 When, as predicted, Appellant was subsequently identified driving down
a street bordering the school, Officer Glick believed his appearance at the
school coupled with recent events that week and coinciding with reports of
a credible threat of violence involving Appellant, gave him reasonable
suspicion to request that Appellant be stopped, identified, and questioned
regarding his purpose for being in the area. He radioed his request to APD
officers and Officer Clements initiated a stop of Appellant(s SUV. Under
these circumstances, we cannot say that Officer Glick(s assessment of the
situation in light of his specialized training and familiarity with the
customs of the school was unreasonable. See United States v. Arvizu, 534
U.S. 266, 276, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).[7]

 In evaluating whether there is a reasonable particularized and
objective basis for detaining a person suspected of wrongdoing for further
investigation, government officials must consider the totality of
circumstances.[8] Because Officer Glick(s information was based on face-to-
face encounters with students,[9] some of which were known to have provided
credible and reliable information in the past,[10] we find that Officer
Glick had a reasonable suspicion to believe Appellant was on the school(s
perimeter for the purpose of engaging in criminal activity that might
involve weapons and shootings.[11] Further, there is no evidence of record
indicating Officer Glick(s student sources were connected to law
enforcement or paid informants.

 That Appellant was detained on a public street bordering the school
rather than on the school(s campus is of no moment. In light of the recent
events at the school as well as the reported threats of gang-related
violence, weapons, and shootings with Appellant being identified by
credible sources as one being involved, Appellant(s presence on the
school(s immediate perimeter on the day the violence was to occur required
immediate action to assure the safety of students. The officers did not
need to wait until Appellant (crossed the line( to detain him.

 Having determined Officer Clements(s investigative detention of
Appellant was reasonable under the circumstances, we find the trial court
did not abuse its discretion by finding the marihuana Officer Clements
discovered in plain view in the SUV was admissible at trial and denying
Appellant(s motion to suppress. Appellant(s sole issue is overruled.

 Conclusion

 The trial court's judgment is affirmed.

 Patrick A. Pirtle
 Justice

Publish.

-----------------------
 [1]See Tex. Health & Safety Code Ann. ( 481.121(b)(1) (Vernon 2003).

 [2]Officer Glick testified it was not uncommon for hundreds of
students to gather to watch a fight.

 [3]Officer Glick also learned from his sources that the rumored fight
at Glenwood Park was a diversion intended to draw attention away from the
school where the actual fight was to occur.

 [4]There was no indication in the record whether this statement was
made prior to receiving warnings regarding his right against self-
incrimination. Neither was there any objection to Officer Carroll(s
testimony and the voluntariness of Appellant(s statements were not
challenged at the suppression hearing.

 [5]In New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d
720 (1985), the United States Supreme Court stated:

 [T]he requirement of reasonable suspicion is not a requirement of
 absolute certainty: "sufficient probability, not certainty, is the
 touchstone of reasonableness under the Fourth Amendment. . . ."

469 U.S. at 346 (quoting Hill v. California, 401 U.S. 797, 804, 92 S.Ct.
1106, 28 L.Ed.2d 484 (1971)).

 [6]The same factors applicable when establishing probable cause are
also relevant in the reasonable suspicion context except that a lesser
showing of suspicion is required. State v. Fudge, 42 S.W.3d 226, 239
(Tex.App.(Austin 2000, no pet.) (citing White, 496 U.S. at 328-29). When
reviewing an investigative detention under either state or federal law, it
is accepted that (law enforcement officers may stop and briefly detain
persons suspected of criminal activity on less information than is
constitutionally required for probable cause to arrest.( Johnson, 912
S.W.2d at 235 (quoting Crockett v. State, 803 S.W.2d 308, 311
(Tex.Crim.App. 1991)).

 [7]Officer Glick served as school liaison officer at the school for
twelve years. (School officials have a specialized understanding of the
school environment, the habits of students, and the concerns of the
community, which enables them to (formulat[e] certain common-sense
conclusions about human behavior.(( United States v. Sokolow, 490 U.S. 1,
8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting United States v. Cortez,
499 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

 [8]While making a determination regarding the more stringent Fourth
Amendment standard of probable cause to search, the Texas Court of Criminal
Appeals described the totality-of-the-circumstances test as follows:

 [The] totality-of-the-circumstances approach is far more consistent
 with our treatment of probable cause than is any rigid demand that
 specific "tests" be satisfied by every informant(s tip. Perhaps the
 central teaching of our decisions bearing on the probable-cause
 standard is that it is a "practical, nontechnical conception." In
 dealing with probable cause, . . . as the very name implies, we deal
 with probabilities. These are not technical; they are the factual and
 practical considerations of everyday life on which reasonable and
 prudent men, not legal technicians, act. . . .

Dixon, 206 S.W.3d at 618 n.20 (quoting Illinois v. Gates, 462 U.S. 213,
231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

 [9]A tip provided by an unidentified (known student( may be relied on
as added indicia of reliability permitting a school official to rely on the
tip. In re K.C.B., 141 S.W.3d 303, 307 (Tex.App.-Austin 2004, no pet.).
Moreover, Texas courts have distinguished between anonymous telephone
informants and informants that personally approach officers. See, e.g.,
State v. Garcia, 25 S.W.3d 908, 912-13 (Tex.App.(Houston [14th Dist.] 2000,
no pet.). (Unlike a person who makes an anonymous telephone call, an
individual presenting himself to the officer in person . . . puts himself
in a position to be held accountable for his intervention; thus, the
reliability of the information he provides is increased.( Id. at 913.

 [10]See Adams, 407 U.S. at 146-47 (held that informant personally
known to officer provided (enough indicia of reliability( to create
probable cause); Dixon, 206 S.W.3d at 616-17 (held that informant
personally known to officer as credible and reliable based upon past
information provided (enough indicia of reliability( to create probable
cause).

 [11]Officer Glick(s sources had verified approximately 200 students
gathered to witness a fight involving Appellant on March 31, predicted the
violent assault that occurred on April 3 and also predicted that Appellant,
a non-student, would be present at the school on April 4 to participate in
a gang-related fight involving weapons and shootings. That a tip contains
(predictive information( capable of verification is also indicia of
reliability. See Fudge, 42 S.W.3d at 239-40.